SAMUEL BROWN *vs.* BENJAMIN KING & another.
HANNAH KING *vs.* SAMUEL BROWN.

If the seizin of a party, at a given time, is proved or admitted, the legal presumption is that such seizin continues, and the burden of proof is on him who alleges a disseizin ; and that burden remains on him, even after he has given *primâ facie* evidence of a disseizin.

If one agrees to buy and another to sell land, and no consideration is paid, nor deed given, and the buyer enters into possession, the fair inference is that the entry and possession are not adverse and a disseizin, but by consent of the owner and in subordination to his title, until payment is made and a deed given, and constitute a tenancy at will. But if, on such agreement, the consideration is paid, and the owner consents that the buyer may enter and hold the land as his own, and the delay in giving a deed is by accident or mistake, or because a deed cannot be immediately procured, and the owner agrees to give a deed, without further consideration or condition, and the buyer thereupon enters into possession ; such entry and possession are not to be deemed subordinate to the title of the owner, but as adverse and a disseizin.

In a suit between B. and K., to try the title to land which was extended in execution by K., as the property of D., and which D. was alleged to have acquired by disseizing B., it was held that a deed, made by D. to B., without fraud or duress, and with a knowledge of its purport and effect, in which D. conveyed to B. the buildings which D. had erected on the land, describing them as standing on the land of B., was conclusive evidence that D. recognized B.'s title to the land, and his own interest in the buildings as personal property ; and that such deed should take effect against K., although it was executed after he attached the land as the property of D.

Where two magistrates, who took a deposition within the Commonwealth, in perpetual remembrance, stated, in their certificate annexed thereto, that "the deponent. being sworn to testify the truth, the whole truth, and nothing but the truth, in the case in hearing before us, made oath to the truth of the foregoing deposition by him made and subscribed," and that the parties interested had due notice and appeared with their counsel ; it was held that the deposition was admissible in evidence ; especially when objected to by the counsel who were present when it was taken.

THE *first* of these cases was a writ of entry to recover the chambers of a dwellinghouse which was on a lot of land in

Abington, containing about one half of an acre. The demand-
ant, at the trial before the chief justice, proved title by pur-
chase, and it was conceded that prior to 1808 he was seized in
fee.  The tenant claimed under the levy of an execution made
upon the demanded premises, as the real estate of James Dyer,
on the first of January 1840 — the same having been attached
upon mesne process on the 30th of August 1838.

The case stated for the tenants, to prove title in Dyer at the
time of the levy, was, that Dyer disseized Brown, the demand-
ant, in 1808 or 1809, and held adverse and uninterrupted pos-
session for more than 20 years, and by force of the statute of
limitations obtained a title.

The case stated for the demandant was, that although Dyer
entered in 1809, and built a house and other buildings, and en-
closed the lot, and had exclusive possession from that time till
the time of the levy, yet that the entry was by Brown's permis-
sion, and that the holding was not adverse ; that the parties
considered the buildings as the personal property of Dyer, and
that in 1834 a settlement was made, by which Dyer allowed and
paid Brown rent for the use and occupation of the land ; and
that on the 22d of August 1838, Dyer executed a bill of sale
to Brown, by which, for a valuable consideration, he sold the
buildings to Brown, describing them as standing on the land of
Brown.

Evidence was introduced by the demandant, tending to show
that Dyer entered on the premises in 1808, enclosed the lot
with a fence, built a house upon it, and occupied the house for a
dwelling, and the lot for a garden, from that time to the time of
the tenants' levy.  Dyer testified that he agreed to purchase the
land of Brown, in 1808, at the price of $100 ; that he and
Brown were then in partnership in business ; that no payment
was made, or deed given, at that time.

There was conflicting evidence upon the question whether in
a settlement between Dyer and Brown, in 1834, Dyer made an
allowance to Brown for the use and occupation of this land.
Lysander Brown, whose deposition was taken in perpetuam,
and admitted in evidence, testified to the said settlement which

was signed by Dyer, in which were items of charge to Dyer, (as appeared by inspection of the paper, which was produced,) for rent of the premises in controversy. The execution of the abovementioned bill of sale, of August 22d 1838, was also testified to by said Lysander Brown and one Cushing, who attested it as witnesses, and who also testified that Dyer read it and understood its purport.

Dyer testified that he never agreed to pay rent for the land, and never knowingly made any allowance in account for the use thereof; that although he executed the bill of sale, yet he did not know or understand that its purport was to sell the buildings as personal property, and recognize the title of the demandant to the land.

The evidence was left to the jury, with a direction, that if Dyer paid or agreed to pay rent for the use of the land, it was evidence that he was a tenant at will, and not a disseizor : That as to the bill of sale, it was strong evidence that Dyer recognized the demandant's title to the land and his own interest in the buildings as an interest in personal property ; and that if the bill was executed by him, without fraud or duress, and with a knowledge of its purport and effect, it must be deemed conclusive.

The jury were also instructed, that as the seizin of the demandant was proved or admitted to have once existed, that seizin must be presumed to continue till proved to be changed, and that the burden of proof was upon the tenants to show such change : That to prove a disseizin by Dyer, it must appear that he entered and held adversely, contrary to the will and intent, and adversely to the title, of the owner : That if he entered and held by the permission and with the consent of the owner, whether any rent was paid, or not, the entry and possession were not adverse, but his possession was a tenancy at will, and not a disseizin : That if Dyer agreed to purchase the land, and Brown to sell it, at an agreed price, but no payment was made and no deed given, and thereupon Dyer entered and erected the buildings, the fair inference would be that the entry was by consent of the owner, and in subordination to his title,

until payment made and a deed given ; and if the entry and possession were by such consent, they were not adverse : That if there was such an agreement for a sale and purchase, and the price was not paid, and if there was an agreement or understanding that Dyer might enter in the mean time and erect his buildings, he would have an interest in such buildings, as personal property, and that his entry and possession would not be a disseizin : That the acts done by Dyer, in building on the land, enclosing and occupying it, would constitute a disseizin, if adverse.

The jury returned a verdict for the demandant.

The admission in evidence of the deposition of Lysander Brown, taken in perpetual remembrance, was objected to by the tenants, because the caption or certificate of the justices, (a copy of which is in the margin,*) did not show that it was taken in the manner required by the Rev. Sts. c. 94.

New trial to be ordered, if said deposition ought not to have been admitted, or if the instruction of the court was not right ; otherwise, judgment to be rendered on the verdict.

*W. Baylies & Eddy*, for the tenants. The deposition of Brown should not have been admitted, as it does not appear

---

* Commonwealth of Massachusetts.

Plymouth, ss.   Town of Kingston, this 17th day of October, 1840, personally appeared before us, the subscribers, two justices of the peace, in and for the county of Plymouth, one of us being also a counsellor at law, the aforesaid deponent, who being sworn to testify the truth, the whole truth, and nothing but the truth, in the case in hearing before us, made oath to the truth of the foregoing deposition contained on the two preceding sheets, by him made and subscribed.   Taken at the request of Samuel Brown of Abington, in the county of Plymouth, yeoman, to be preserved in perpetual remembrance of the thing ; said Samuel Brown having filed with us, on the 13th instant, the statements and request by him signed, and hereto annexed, marked A.   And we summoned the said Lysander Brown, and duly notified Benjamin King, Esquire, Ira Nash, Merchant, and Hannah King 2d, single woman, all of Abington aforesaid, of the time and place of taking the foregoing deposition ; at which said time and place the said Benjamin King appeared with his attorney, Zachariah Eddy, Esquire, who also appeared as the attorney of the said Nash and the said Hannah King 2d.

Joseph Sampson, Justice of the Peace, and Counsellor at Law.
Eli Cook, Justice of the Peace.

affirmatively and unequivocally, that he was sworn before he testified, or that it was read to or by him, or that it was written by him or by one of the justices, or by a disinterested person in the presence and under the direction of the justices. The certificate of the " manner of taking it " should have stated all the acts of the magistrates in taking it. Rev. Sts. *c.* 94, §§ 36. 20 – 23. *Bradstreet* v. *Baldwin,* 11 Mass. 233. *Amory* v. *Fellowes,* 5 Mass. 221. *Welles* v. *Fish,* 3 Pick. 74. *Bell* v. *Morrison,* 1 Pet. 355. *The Thomas & Henry* v. *United States,* 1 Brock. 367. *Nelson* v. *United States,* Peters C. C. 235. *United States* v. *Smith,* 4 Day, 127. *Bailis* v. *Cochran,* 2 Johns. 417. Coxe's Digest, 244, 245. Greenl. on Ev. § 323. Besides ; the oath, as certified, was to testify " in the case in hearing " before the magistrates, when no case was heard before them.

Dyer had adverse possession, as he occupied and claimed the land as his own. *Lund* v. *Parker,* 3 N. Hamp. 49. *Proprietors of Kennebec Purchase* v. *Laboree,* 2 Greenl. 275. *Jackson* v. *Wheat,* 18 Johns. 40. And though, as a general rule, seizin is presumed to continue, yet such long exclusive possession, as Dyer had in this instance, takes the case out of the rule, and puts the burden of proof upon the demandant. Stearns on Real Actions, 38. 3 Stark. Ev. 1196. *La Frombois* v. *Jackson,* 8 Cow. 589. *Rehoboth* v. *Carpenter,* 23 Pick. 136. *Parker* v. *Locks & Canals,* 3 Met. 102. *Rickard* v. *Rickard,* 13 Pick. 251. Run. on Eject. 55. *Doe* v. *Prosser,* Cowp. 218. *Mehaffy* v. *Dobbs,* 9 Watts, 363. *Law* v. *Patterson,* 1 Watts & Serg. 184. *Williams* v. *Nelson,* 23 Pick. 145 – 147.

The question whether Dyer's possession was adverse was not left to the jury in so open and unrestricted a manner as to give the tenants the full benefit of the facts in their favor.

The jury were wrongly instructed that Dyer's possession must have been against the will and intent of the owner, in order to render it adverse and operate as a disseizin. It has been held that a disseizin may be effected without the owner's knowledge. *Poignard* v. *Smith,* 6 Pick. 172. It has also been held that an entry and possession, under an agreement or a

purchase, and a payment, though no deed is given, is adverse to the owner. *Barker* v. *Salmon*, 2 Met. 32. See also *Clapp* v. *Bromagham*, 9 Cow. 530. *Ex parte Jones*, 4 Younge & Collyer, 466.

*Beal*, for the demandant. The Rev. Sts. *c.* 94, have not changed the law as it stood under *St.* 1797, *c.* 35, § 3. And the certificate which was prescribed by that statute, did not contain a statement by whom the deposition was written. The decision in *Reed* v. *Boardman*, 20 Pick. 444, though made in the case of a deposition taken out of the Commonwealth, under a commission, is sufficient to warrant the admission of the deposition in question — especially as the tenants' counsel was present at the taking.

The instructions to the jury, as to adverse possession, when taken together, are open to no exception. The single expression, that the entry, &c. must have been against the demandant's will and intent, was afterwards so qualified as to give the jury the precise law of the case.

The burden of proof was clearly on the tenants to show that the demandant's seizin did not continue. If the whole evidence left this in doubt, the demandant was entitled to a verdict. *Sperry* v. *Wilcox*, 1 Met. 267.

The *second* case was a writ of entry, in which the demandant counted on her own seizin, and claimed title to the lot of land and the lower story of the dwellinghouse mentioned in the foregoing case of *Brown* v. *King & another*. The demandant claimed title to the demanded premises, under the levy of an execution, made thereon, as the estate of James Dyer, January 1st 1840, the same having been attached August 18th 1838. This case went to the same jury that tried the foregoing case, and it was agreed by the parties, that all the evidence given in that case, subject to the same exceptions, should be considered by the jury. It was admitted that the tenant was seized in fee of the demanded premises, up to 1808 or 1809 ; and the demandant relied on a disseizin of the tenant by said Dyer in 1808, or at some later time, and a lapse of twenty years from

and after such disseizin, without entry or claim by the tenant, whereby Dyer obtained an indefeasible estate in fee.

The evidence in this case was similar to that in the preceding, and the instructions to the jury were in substance the same as in that case   Some further statements were made to the jury as to acts, &c. that would or would not constitute adverse possession and work a disseizin ; as follows :  That if one agrees to buy and the other to sell, and the consideration is paid, and the owner consents that the purchaser should enter and hold the land as his own, and the delay in giving the deed is occasioned by accident or mistake, or because a deed cannot be immediately procured, and the owner agrees to give a deed, without further consideration or condition, and thereupon the purchaser enters ; such entry is not to be deemed subordinate to the title of the owner, but an entry and possession by one as owner ; and although such parol executed agreement would not pass the estate, nor bar the entry of the owner, yet it would be deemed in law an adverse holding, and a disseizin ; and if continued 20 years, without entry of the owner or other interruption, it would bar the owner's entry and right of action :  That though, on such contract of sale, the money not paid nor the deed given, the presumption is that it was not intended that the estate should pass, yet this is a presumption of fact, which may be controlled and rebutted by evidence ; and therefore if a note or other satisfactory security be given for the purchase money, or any other definite agreement made for the payment of it, and it is understood and agreed that the purchaser may enter and occupy as owner, and the owner does not withhold the deed with an intent to retain the title as security for the purchase money, but agrees to execute a deed without further payment or the performance of any other condition, then the entry of the purchaser, and his exclusive possession as owner, is to be considered as adverse to the title of the former owner ; and though it would not pass the estate, because a parol agreement, yet it would constitute a disseizin, and 20 years' uninterrupted possession under it would constitute a title.

The verdict was for the tenant ; and the demandant moved

for a new trial on account of the admission of the deposition mentioned in the preceding case, and the instructions given to the jury.

*W. Baylies & Eddy*, for the demandant. In *this* case, the bill of sale, which Dyer made of the house, was *after* the demandant had attached it. That sale, therefore, could not affect the demandant's title. It was not tantamount to an entry. Rev. Sts. c. 119, § 8. Stearns on Real Actions, 20, 46, 47, 64. It was, at most, a mere declaration of Dyer, which could not affect the title. No change was thereupon made in the possession. *Bridge* v. *Eggleston*, 14 Mass. 246. *Davis* v. *Spooner*, 3 Pick. 284. 18 Vin. Ab. Relation, E. F.

*Beal*, for the tenant, cited *Church* v. *Burghardt*, 8 Pick. 327.

WILDE, J. These cases, on trial, were submitted to the same jury, the same questions being raised in both cases, and depending substantially on the same evidence. The principal question was, whether one James Dyer, from whom the Kings have derived their title, had established a valid title by disseizin. On this question the evidence was contradictory, and the question now to be decided is, whether the ruling of the court and the instructions to the jury were correct, or in any respect erroneous.

The jury were instructed that the burden of proof was on the party setting up Dyer's title, to prove that his possession was such as to show that it was adverse to the title of Brown, the legal owner ; and we think that no exception to this part of the charge to the jury can be sustained. It has been argued, that as it was clearly proved that Dyer entered, and had the exclusive possession of the premises, for more than 20 years, taking all the profits to his own use, this was good presumptive evidence that his possession was adverse, and amounted to a disseizin ; and that a *primâ facie* title having been proved under Dyer, it was incumbent on the other party to rebut this presumptive evidence, and that thus the burden of proof was shifted. We have no doubt that this was good presumptive evidence of title in Dyer by disseizin, if there were no other

evidence ; but there was conflicting evidence on the question whether his possession was adverse or permissive. And the burden of proof was on the Kings, who set up his title, to prove that his possession was adverse, and not by the permission of Brown. Where a party grounds his title on an allegation, whether affirmative or negative, he must prove it. Presumptive evidence of title, although sufficient to make out a good *primâ facie* case, does not necessarily change the burden of proof. If on the whole evidence, the jury were in doubt whether the possession of Dyer was adverse or permissive, his title must fail. *Sperry* v. *Wilcox*, 1 Met. 267.

As to the evidence necessary to prove a disseizin, the jury were instructed " that it must appear, that Dyer entered and held adversely, contrary to the will and intent, and adversely to the title, of the owner ; but that if he entered and held by the permission and with the consent of the owner, the entry and possession were not adverse." It is objected, that to prove a disseizin it is not necessary to show that the entry and possession were contrary to the will and intent of the owner. And it must be admitted, that if this part of the instructions stood alone and unexplained, it would be liable to exception. But the meaning is explained by the part of the instructions immediately following. Taking the whole sentence in connexion, the meaning, we think, is sufficiently clear. By the expression, " contrary to the will and intent, and adversely to the title of the owner," nothing more is to be understood, than that the entry and possession of Dyer must appear to have been without the consent and adversely to the title of the owner. The material question for the jury to decide was, whether Dyer's entry and possession were by the permission and with the consent of Brown the owner ; and the instructions objected to must be understood as having reference to that question ; and thus understood, this part of the instructions is perfectly correct.

Another exception is, that the case was not left to the jury sufficiently open. This exception is somewhat indefinite ; but we find nothing in the instructions to support it in any respect. The remarks made as to the inference which might be drawn from

certain facts, if proved to the satisfaction of the jury, are not, we think, open to any valid exception. The jury were instructed "that if Dyer paid, or agreed to pay rent for the use of the land, it was evidence that he was a tenant at will, and not a disseizor." And undoubtedly such a payment or agreement would be evidence, and conclusive evidence, to that effect. So if Brown had been disseized by Dyer previous to 1835, his payment of rent would purge the disseizin. And the conveyance by Dyer of his buildings, described as " standing on the land of Brown," was evidence, as restricted by the instructions, for the jury to consider ; although the deed was given after the attachment by Hannah King. Such an admission was equivalent to an entry on the land by Brown. Whether Brown had then the right to enter depended on the other evidence in the case. If he had no such right, this part of the instructions would be immaterial.

The only remaining exception is to the ruling of the court admitting in evidence the deposition of Lysander Brown.

The *first* objection to the caption or certificate of the justices is, that it does not show that the deponent was sworn before his examination. But we think it does appear with sufficient certainty, that the deponent was so sworn. The certificate is in the words of the statute — " the deponent being sworn to testify the truth, the whole truth, and nothing but the truth, made oath to the truth of the foregoing deposition," &c. By this we understand that the deponent was, before the examination, sworn to testify the truth, &c., and that after the deposition was written out, he made oath to the truth of it.

The *second* objection is, that the oath was to testify the truth, in the case then in hearing, when there was no case in hearing before the magistrates. I will not denominate this a captious exception, but it is rather hypercritical, and in our opinion is not supported by any sound and substantial reason.

The *third* and last objection is, that it does not appear that the deposition was written by the deponent or by the justices, or either of them, or by any other person by their direction, or that 't was read to or by the deponent. The certificate as to these

particulars might have been more clear and explicit, and more in detail ; but it is certified that the deposition was *made* and subscribed by the deponent. The meaning seems to be that the deposition was *written* either by the deponent himself, or by one of the justices, or by some other person by their direction ; and that it was read to or by the deponent. If it were not so written and read, it would seem that the justices could not certify of their own knowledge that the deposition was *made* by the deponent. And we do not think this a strained construction of the certificate, considering the circumstances attending the taking of the deposition. One of the tenants' counsel was present, and if the deposition was not taken according to the directions of the statute, it would have been undoubtedly proved. The most favorable construction, therefore, ought to be given to the certificate of the justices, in support of the regularity of their proceedings.

In *Reed* v. *Boardman*, 20 Pick. 444, it was decided that a deposition, taken under a commission, was rightly admitted, although it did not appear by the certificate of the commissioner that he had conformed, in all particulars, to the rule of court as to the manner of taking the deposition. It was presumed in that case, that the commissioner had conformed to the directions in the rule. A like presumption, and for stronger reasons, might be justified in the present case, whatever construction may be given to the justices' certificate. Every reasonable presumption ought to be made in favor of admitting in evidence a deposition to perpetuate the testimony of a witness ; especially where the counsel of the party objecting to the admission was present at the examination of the witness. And there is no reason to doubt that the deposition was fairly taken, and according to the directions of the statute. The *St.* of 1797, *c.* 35, § 8, gives the form of a certificate of the caption of a deposition taken *in perpetuam*, which does not require the justices to certify by whom the deposition was written, although the same section requires the deposition to be reduced to writing by one of the justices, or by the deponent in their presence. But this direction was not considered as a condition precedent, a compliance with which

was to be shown by the caption. It was to be presumed to have been complied with, unless the contrary could be shown. And in this respect there is no reason for supposing that the legislature intended to make any alteration by the revised statutes.

*Judgment on the verdicts.*