FRED BECKMAN, APPELLEE, V. LINCOLN & NORTHWESTERN RAILROAD COMPANY, APPELLANT.

FILED MAY 24, 1907. No. 14,987.

1. **Eminent Domain: EXERCISE OF RIGHT.** A railroad company cannot exercise the right of eminent domain, except to take, hold and appropriate so much real estate as may be necessary for the location, construction and convenient use of its own road, and it has no authority to take land for the use of another company in the construction of the road of the latter.

2. ———: ———. A railroad company which has leased its lines may, if the lease so provide, extend its lines for the benefit of its lessee, and for this purpose may maintain condemnation proceedings in its own name.

3. ———: INJUNCTION: EVIDENCE. Where a plaintiff, in an action to restrain a railroad company from entering upon his land and constructing a railroad, pleads that the defendant company has instituted condemnation proceedings and deposited the damages as required by law, and that the road is being constructed across his land pursuant to such proceedings, and that the proceedings are void because the road is in fact being constructed by and for another company, the burden is upon him to prove the latter allegation.

4. Evidence examined, and *held* insufficient to establish the plaintiff's allegation that the road is not in fact being constructed by and for the corporation which is seeking to obtain the right of way by condemnation proceedings.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed and dismissed.*

*J. W. Deweese* and *F. E. Bishop,* for appellant.

*Field, Ricketts & Ricketts, contra.*

SEDGWICK, C. J.

This action is brought to restrain the Lincoln & Northwestern Railroad Company, a corporation, from entering upon the plaintiff's land and constructing, or permitting the Chicago, Burlington & Quincy Railway Company to construct, a railroad thereon, claiming the right by virtue of certain condemnation proceedings. The defendant, the Lincoln & Northwestern Railroad Company, was incorporated under the laws of this state in 1879 to construct a line of railroad from the city of Lincoln, Nebraska, to Columbus, Nebraska, and thence to the north boundary of the state. The road has been constructed as far as to Columbus. In the following year it leased its right of way and all of its property and franchises to the Burlington & Missouri River Railway Company in Nebraska (a corporation also organized under the laws of this state) for

the period of 999 years. Afterwards the Chicago, Burlington & Quincy Railroad Company purchased the road and property of the Burlington & Missouri River Railway Company, including the lease from the defendant company. In May, 1906, the defendant company began proceedings in the county court of Lancaster county to condemn a right of way across the plaintiff's land for the construction of a railroad. On its application, appraisers were appointed and the plaintiff's damages appraised, and the amount so found was deposited by the defendant company with the county court, and afterwards appeals were taken by both parties to the district court. Those appeals are still pending. While the application was pending in the county court, and before the damages had been assessed, the plaintiff sought to question in that court the right and authority of the defendant to exercise the right of eminent domain, but was not permitted to do so by reason of lack of jurisdiction to determine such a question. The plaintiff then began this action in the district court for Lancaster county. Upon the trial of the action in the district court, judgment was entered enjoining the defendant as prayed, and from that judgment the defendant has appealed to this court.

1. The defendant objects that the plaintiff is not entitled to relief by injunction, and that the relief which the plaintiff seeks could only be obtained in an action of *quo warranto* to determine the rights and powers of the defendant corporation. We do not see any merit in this objection. The matters complained of in the petition are not that the defendant is seeking to exercise powers not given it by its articles of incorporation under the law. It is not claimed that the defendant is without the general power to exercise the right of eminent domain, but that its attempted exercise of that right in this particular case is unlawful. There can be no doubt that a court of equity may enjoin a corporation from exercising its corporate powers in an unlawful manner to the injury of an individual, when the ordinary course of the law affords no

Beckman v. Lincoln & N. W. R. Co.

adequate remedy. Under the law of this state, as it has been construed, the landowner, when his property is taken by a railroad corporation in condemnation proceedings by virtue of the right of eminent domain, has no adequate remedy in those proceedings against the wrongful taking of the property for other purposes than for the necessary uses of the corporation seeking to condemn the land. In *Mattheis v. Fremont, E. & M. V. R. Co.*, 53 Neb. 681, it is determined that the county court has no jurisdiction to afford such relief. An appeal to the district court does not vacate or supersede the proceedings in the county court so as to prevent the railroad company from proceeding with the construction of its road upon the land, which may be completed and the road in operation before the matter is finally heard in the district court. Any relief that the district court might then afford cannot be said to be adequate. On the other hand, it is equally clear that the corporate existence of the defendant cannot be attacked, nor its right to exist and exercise its corporate franchises challenged by a private individual in this form of action.

2. The contention of the plaintiff is, in substance, that the defendant is not engaged in the construction of the line which crosses his land, but that the same is being constructed by the Chicago, Burlington & Quincy Railroad Company for its own use and benefit; that the nearest point on defendant's line of railroad is more than two miles from his premises, and that the condemnation proceedings are not prosecuted in good faith for the proper use of the defendant, and are in fraud of plaintiff's rights. The contention of the plaintiff that "a railroad company cannot use its powers of eminent domain to acquire a right of way for another company's road" is manifestly right. "Such corporation is authorized to enter upon any land for the purpose of examining and surveying its railroad line, and may take, hold and appropriate so much real estate as may be necessary for the location, construction and convenient use of its road." Ann. St., sec. 9967.

It clearly has no authority to take land for the use of another company in the construction of the road of the latter.  No one would contend that this defendant company could go into a distant county of the state and condemn land for the construction of a road in which it would have no interest when constructed, a road that would be the property of another company and used exclusively by that other company.  The Lincoln & Northwestern Railroad Company may condemn land necessary for the construction of its road, but it cannot condemn land for the construction of a road by and for the Chicago, Burlington & Quincy Railroad Company, or any other company, and the principal question in this case is whether this land is being taken for the construction of the road of the defendant in this action, or whether it is in fact being taken for the construction of the road of the Chicago, Burlington & Quincy Railroad Company.  It appears from the record that the latter company, which is sometimes spoken of as the "Burlington" operates a line of road from Chicago, through Omaha and Lincoln, to Denver, and that the road of the defendant company, as before stated, extends from Lincoln to Columbus.  The two roads are thus connected for interchange of traffic at Lincoln.  They use the Lincoln "yards" in common and have done so for many years. The improvements now being made involve a reconstruction of the lines of both roads west and northwest of Lincoln, and also of the railroad yards used in common.  The particular part of the road in question is to extend from a point near Denton, which is a few miles west of Lincoln on the Burlington line, into these common yards, and together with other improvements and lines will afford a new route of connection between the two lines.

It is argued in the brief that this new line in question, extending as it does from the Burlington line to the yards used in common, is intended principally, if not entirely, for the use of the Burlington company, and must for that reason be held to be an extension of the Burlington line,

and not a branch of the defendant's line. We do not think that this distinction is meritorious. The statute provides that railroad companies may "construct branches from the main line to other towns and places within the limits of this state." Ann. St., sec. 9953. *Trester v. Missouri P. R. Co.*, 33 Neb. 171. If the yards used in common are the yards of the Burlington company, and the defendant company's road runs into those yards, it might extend its line through those yards to another road, and so make connections therewith. In such case the state would not be interested in the question as to which company was in fact building the connecting line. The statute quoted will not admit of a construction that would prohibit the defendant company from building such connection, and as that part of the line which is in question here connects with both roads, and will or may be used by both roads in the interchange of traffic, it is clear that either road might build the line, and the road that was so building the line in good faith might exercise the right of eminent domain to secure the necessary right of way for that purpose. When the defendant leased its right of way and property and franchises to the Burlington & Missouri River Railway Company for 999 years, as before stated, that company took over the property and began operating the same in connection with its other lines of road, until it was consolidated with its successor, the Chicago, Burlington & Quincy Railroad Company, which latter company has since been and still is operating the same in the same manner.

The effect of this lease and the rights of the parties thereto in regard to condemnation proceedings were considered and determined in *Deitricks v. Lincoln & N. W. R. Co.*, 13 Neb. 361, and *Gottschalk v. Lincoln & N. W. R. Co.*, 14 Neb. 389, and it was held that the fact that this defendant had executed a lease of all of its property for so long a term, with the conditions and provisions set forth in the opinions referred to, did not prevent the defendant company from extending its lines for the benefit of the lessee, and that in doing so this defendant might maintain con-

demnation proceedings in its own name. We consider these cases as settling the law upon these questions in this state, and they are well supported by authorities in other jurisdictions. *Mayor and Aldermen of Worcester v. Norwich & W. R. Co.,* 109 Mass. 103; *Chicago & W. I. R. Co. v. Illinois C. R. Co.,* 113 Ill. 156; *Lower v. Chicago, B. & Q. R. Co.,* 59 Ia. 563; *Chicago & A. R. Co. v. People,* 152 Ill. 230, 38 N. E. 1075; *State v. Superior Court,* 31 Wash. 445, 72 Pac. 89. The railroad company seeking to condemn land can only do so when the land is necessary for the construction of its road; but, on the other hand, a railroad company which has leased its road and franchises and property for a term of years may still make extensions and build branch lines, and the fact that the same are to be used by another company, its lessee, and that other company is to have the exclusive beneficial interest in the use of the property, will not prevent the prosecution of condemnation proceedings in the name of the company that is actually building the same. If it is the road of the defendant that is being constructed, the condemnation proceedings should be in the name of the defendant, but, if it is the road of some other company that is being constructed, then the condemnation proceedings could not be maintained by this defendant.

The question at issue is one of fact, and not of law, and requires an examination of the record. The trial is one *de novo* in this court, under section 681a of the code, and must be determined here in accordance with the ordinary rules governing the burden of proof and the competency and materiality of the evidence. The first point necessary to determine is upon whom is the burden of proof.

In every case, all allegations necessary to the plaintiff to make out his case and entitle him to the relief he asks must be proved by him. If an allegation material to the plaintiff's case is essentially negative in its character the rule remains the same. "Whenever under the rules of substantive law applicable to the rights or liabilities in

dispute between the parties, an affirmative case requires proof of a material negative allegation, the party, whether plaintiff or defendant, has the burden of proving it." 16 Cyc. 927, and cases cited. This proposition is discussed at large in *Goodwin v. Smith*, 72 Ind. 113, and in a note to the same case in 37 Am. Rep. 148. The court in its opinion, quoting from a prior case in the same court, said: "Where the plaintiff grounds his right of action on a negative allegation, the establishment of which is an essential element in his case, he is bound to prove it, though negative in its terms." In *Stokes v. Stokes*, 155 N. Y. 581, it was said in the syllabus (50 N. E. 342) that the defendant, "was bound to establish his defense or counterclaim, although it required the proof of a negative, and that he did not sustain this burden of proof by testifying that he deposited the bonds as security for the notes, without stating that they were deposited for no other purpose," and the court, quoting from the case of *Lamb v. Camden & A. R. & T. Co.*, 46 N. Y. 271, said: "It sometimes occurs, in the progress of a trial, that a party holding the affirmative of the issue, and consequently bound to prove it, introduces evidence, which, uncontradicted, proves the fact alleged by him. It has, in such cases, frequently been said that the burden of proof was changed to the other side; but it was never intended thereby that the party bound to prove the fact was relieved from this; and that the other party, to entitle him to a verdict, was required to satisfy the jury that the fact was not as alleged by his adversary. In such cases, the party holding the affirmative is still bound to satisfy the jury affirmatively of the truth of the fact alleged by him, or he is not entitled to a verdict,"—citing several other cases. In *Brown v. King*, 46 Mass. 173, the court said: "Where a party grounds his title on an allegation, whether affirmative or negative, he must prove it. Presumptive evidence of title, although sufficient to make out a good *prima facie* case, does not necessarily change the burden of proof." In *Royal Ins. Co. v. Schwing*, 87 Ky. 410, 9 S. W. 242, the court, after

stating that averments that were necessary in the petition
must be proved by the plaintiff, although they were of a
negative character, said : "The defendant, however, if the
petition was defective, cured the defect by pleading the
fact that the fire resulted from the fall of the building; still
this did not place the burden on the company, if the plain-
tiff was required to aver and prove the nonexistence of a
state of facts that would exonerate the company from
liability when developed." In *Cook v. Guirkin & Co.,* 119
N. C. 13, 25 S. E. 715, the court quoted with approval from
1 Wharton, Evidence (3d ed.), sec. 354, as follows: "When
ever, whether in plea, or replication, or rejoinder, or sur-
rejoinder, an issue of fact is reached, then, whether the
party claiming the judgment of the court asserts an
affirmative or negative proposition, he must make good
his assertion. On him lies the burden of proof." In
*Gillson & Barber v. Price,* 18 Nev. 109, the court said:
"Where a party grounds his right of action upon a nega-
tive allegation he must prove it. It is then material, and
a denial raises a material issue." See, also, a full discus-
sion of the proposition and of the meaning and applica-
tion of the rule in 2 Ency. Evi. 802, where the rule is thus
stated: "It is now well settled that if a negative alle-
gation is essential in asserting a right, whether on the
part of the plaintiff or defendant, the one asserting the
right has the burden of proving the negative although he
may have failed to make such allegation."

There has been much discussion by various courts on
the subject of burden of proof, and whether the burden of
proof does or can in any case shift during the progress of
the trial. It is clearly pointed out in the authority last
cited that upon the substantive issues between the parties
the burden of proof never shifts; that the words "burden
of proof" are sometimes used in a secondary sense; and
in many cases the party having the burden of proof is
assisted by presumptions. In some cases the pre-
sumptions are so strong that his adversary is required

first to introduce some proof. To say, under such circumstances, that his adversary has the burden of proof means only that he has the burden to introduce a certain quantum of proof, and, when he has done so, the issue is tried and the evidence weighed as upon any other issue, the party making the allegation having the burden of proof upon that issue. This is the logical use of the words "burden of proof." The party making the allegation of fact, whether it be an affirmative or a negative, must, when the evidence is all in, have furnished more proof upon that fact than his adversary has, or he fails to establish his case. It is in this sense that the authorities above cited hold that, when the allegation of a negative fact is necessary to the statement of the plaintiff's case, the burden of proof is upon him who alleges it to establish his case.

The plaintiff in this case assumed this burden upon the trial. He alleged in his petition that the defendant had begun condemnation proceedings in the county court to obtain a right of way across his land; that the amount of his damages occasioned by the taking of the land had been ascertained and allowed by the proceedings in the county court; that the amount had been deposited by the company pursuant to the statute; that he had taken appeal from the allowance of these damages to the district court, where the same is now pending; and that in pursuance of those proceedings a railroad was being built across his land. His petition shows that the road was being built for actual use as a public railroad, and that it will be an important part of a public system of railroads, so that the allegations of his petition show that it is a plain case of right to condemn this right of way, except for one controlling fact which he alleges to exist, viz., that this road across his land is being built by and for another corporation as owner thereof, and not by and for the company instituting the condemnation proceedings, so that his cause of action that he has pleaded and presented to the court depends entirely upon this allegation. If the road is being built

by and for another company, his action can be maintained. If it is being built by and for the company which instituted the condemnation proceedings, he has no cause of action. "The party who would be defeated if no evidence were given on either side must first produce his evidence." Code, sec. 283. We must take the issues as they are. The plaintiff has presented a case which depends upon the allegations of the ownership of the road which is being built, and plainly upon this issue, so presented, he has the burden of proof. To maintain this issue on his part he called Mr. Westervelt as a witness. This witness was employed as a right of way man to procure the right of way for this road. He asked this witness for whom he was acting in procuring this right of way, and the witness testified that he was acting for this defendant. This was direct testimony that this defendant was building this road as owner thereof, and it is not weakened by the fact that the witness testified that he was the agent for the defendant. Agency may not be established by proof of unsworn declarations of the supposed agent, but the testimony of the agent himself is direct evidence of the fact of his employment, and is not weakened by the fact that he is in a position to know for whom he is acting. The plaintiff also proved by this witness that he also acted as right of way agent for the Chicago, Burlington & Quincy Railroad Company, and that this company operates a line of road from Chicago to Denver, which line is owned by several distinct corporations, and that all of the lines of these corporations were either owned or leased by the Chicago, Burlington & Quincy Railroad Company, and that the line of road now being operated runs through Mr. Beckman's land. The plaintiff also proved by the witness that the checks which he drew in payment for right of way for the construction of this new line of road in question were drawn upon the Chicago, Burlington & Quincy Railroad Company; that he receives his salary as right of way man from the Chicago, Burlington &

Quincy Railroad Company, but each month he makes an apportionment of his salary among the different subsidiary companies, which is sent to the auditor and charged to the different railroads. It appears from his evidence that the money used to pay for the right of way for this new line is furnished by the Chicago, Burlington & Quincy Railroad Company. It also appears from the evidence of this witness that the vouchers given for the checks drawn upon the Chicago, Burlington & Quincy Railroad Company for money used in the building of this line, and in paying for the right of way, and in paying the damages for injuries to the crop of the tenant upon the land in question, were marked with the letters "A. F. E. L. & N. W."; that these letters stand for the words "Authorized for Expenditure Lincoln & Northwestern"; and that they are so identified for the purpose of enabling the auditor of accounts to charge the expense of procuring this right of way and building this line to the defendant, the Lincoln & Northwestern Railroad Company. The plaintiff admits that so far as his damages are concerned it is immaterial whether this railroad is to be built by the one or by the other corporation, he stands upon his strict legal rights, and alleges that the fact is that the railroad is not being built by the corporation in whose name the right of way is being condemned as the owner of the road, and he insists that the evidence which he has produced is sufficient to establish that fact. It seems clear that he has not established that fact by a preponderance of the evidence.

The defendant offered in evidence a paper purporting to be a copy of the minutes of a meeting of the board of directors of the defendant company authorizing the construction of the line in question. This document was excluded by the district court as secondary evidence. This ruling of the district court was probably correct.

The plaintiff has failed in the proof necessary to estab-

lish his cause of action, and the judgment of the district court is therefore reversed and the case dismissed.

REVERSED.