WAYNE L. CAMPBELL ET AL., APPELLANTS, v. DENNIS H. BUCKLER ET AL., APPELLEES.

220 N. W. 2d 248

Filed July 18, 1974. No. 39301.

Richards & Richards, for appellants.

Story & Ortman and P. J. Heaton, Jr., for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and BRODKEY, JJ., and VAN PELT, District Judge.

Brodkey, J.

This case involves a quiet title action, equitable in nature, brought by the plaintiffs, Wayne L. Campbell and O. Aletha Campbell, husband and wife, against the defendants herein, under the authority contained in sections 25-21,112 to 25-21,120, R. R. S. 1943. Plaintiffs claim title to the disputed strip of land involved in this action by virtue of adverse possession for the full statutory period of 10 years. Defendants filed a general denial to plaintiffs' amended petition and also filed a cross-petition against the plaintiffs seeking to recover damages for an alleged trespass by plaintiffs on the land in question, to which the defendants claimed title. Trial was had, and the premises in question were viewed by the trial judge in the presence of counsel for both parties, following which the court found generally against the plaintiffs on their petition and against the defendants on their cross-petition. In his order and judgment the court specifically found as follows: "1. The evidence fails to support the contention of the plaintiffs that the use of the property in question by plaintiffs was actual, open, hostile, and more important, exclusive and continuous for the statutory period of ten years. 2. The delineation of the property in question by plaintiffs is not sufficiently clear, taking into consideration the character of the land involved and all the circumstances of the case." Plaintiffs then appealed to this court, assigning as error the finding of the District Court that the evidence was insufficient to establish that they had acquired title to the property in question through adverse possession. We affirm.

Actions to quiet title are equitable in nature, and under the well-established rule it is the duty of the Supreme Court to try the issues of fact de novo on the record and to reach an independent conclusion thereon without reference to the findings of the District Court. § 25-1925, R. R. S. 1943; Shirk v. Schmunk,

*ante* p. 25, 218 N. W. 2d 433 (1974); Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504 (1951); Eirich v. Oswald, 154 Neb. 8, 46 N. W. 2d 686 (1951). Such independent conclusions of fact must be determined by this court in accordance with the ordinary rules governing the burden of proof and the competency and materiality of the evidence. Shirk v. Schmunk, *supra;* Beckman v. Lincoln & N. W. R. R. Co., 79 Neb. 89, 112 N. W. 348 (1907). The rule is well established that one who claims title to real estate by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession of the property under claim of ownership for the full period required by statute, which in this state is 10 years. See, Shirk v. Schmunk, *supra;* § 25-202, R. R. S. 1943. Our de novo review of the record will be made in the light of these rules.

Plaintiffs' and defendants own adjoining farms, and the land involved in this case is located in Section 15, Township 15 North, Range 46, in Garden County, Nebraska. The plaintiffs are the owners of record of the west one-half of that section and the southeast quarter is owned by the heirs of Everett Walsh, deceased, who are named as defendants herein. This controversy involves a determination of the exact location of the boundary line between the adjoining properties of the parties, the defendants asserting that the boundary between the properties is the north-south centerline of the section; whereas plaintiffs claim that the present boundary line is along a line located to the east of that centerline by virtue of their adverse possession of a strip of land immediately to the east of the centerline for the full period required by statute. Plaintiffs brought this action for the purpose of quieting title to the land situated between these two lines.

Plaintiff, Wayne L. Campbell, testified he purchased the west one-half of Section 15 in 1949. He started to

farm that land in the spring of 1950 and has farmed it continuously until the present date. He described a pile of rocks located on the land which he assumed marked the southeast corner of the southwest quarter of the section. Using this rock pile as a reference point, he stated that he always farmed along a line running between the rock pile and a fence located in the section immediately to the north of Section 15 and claims that that line is the boundary line between the land of the plaintiffs and that of the defendants.

A significant issue in the case involved the existence or nonexistence of what was referred to in testimony as a "ridge line," "farm ridge," or "plow ridge." Wayne Campbell described that "ridge line" as "a deep ridge raised in the ground" and testified that he always assumed that line to be the boundary line between his property and the property adjoining on the east. Other witnesses for the plaintiff also testified in relation to the "ridge line." Eugene Bond testified that he was familiar with the land in question, having worked on that land with Wayne Campbell in the years 1964 through 1967. According to Bond, there was a distinct "farm ridge" forming the eastern boundary of the plaintiffs' property in 1965. Duane Bondegard also testified that he was familiar with the land in question, having owned farm land in the section immediately to the south of Section 15 since approximately 1962. Bondegard stated that he had noticed the "farm ridge" between the properties of the plaintiffs and the defendants, and that the ridge had been there as long as he had been farming the land immediately to the south. Another witness for the plaintiffs, Edward Schmid, testified that he was acquainted with the land in question, and that to the best of his knowledge, there had been a farm line there for 30 years.

The existence of the alleged "ridge line" is important because the plaintiffs now assert that it formed a clear

line of demarcation between the land farmed by them over the years and that farmed by the defendants. The apparent location of that line was also important to the plaintiffs in 1965, when an irrigation well was drilled on their property. In conjunction with the drilling of that well, several power poles were erected by the Wheat Belt Public Power District. Wayne Campbell testified that he himself directed the placement of those poles and that in so doing he caused the poles to follow the "ridge line" through the section, each of the poles being placed approximately 3 feet west of that line. According to Campbell, it was this placement of the poles in 1965 that initiated the dispute over the ownership of the land upon which the poles were located, and that up to that time there had been no dispute between the parties over the ownership of the strip in question. In any event, it appears that in 1965 William Keefover, county surveyor for Garden County, conducted a survey at the request of Everett Walsh to determine the exact location of the north-south centerline of Section 15. Keefover testified that he found each of the power poles to be located east of the north-south centerline of Section 15. Specifically, he found that the center of the first pole, beginning on the south, was 2.80 feet east of the centerline; the center of the second pole was 6.05 feet east of the centerline; the center of the third pole was 9.31 feet east of the centerline; and the center of the fourth and last pole was 12.45 feet east of the centerline of the section. In spite of this encroachment across the centerline Keefover determined that the well itself was 2.96 feet *west* of the line, and was clearly located upon the land of the plaintiffs. Thus, the power poles, although situated to the east of the centerline of the section, are located west of the alleged "ridge line" and, therefore, upon the land to which the plaintiffs now claim title through adverse possession.

Much of the evidence adduced by the defendants was in direct conflict with the evidence presented by the plaintiffs. Daniel Walsh, a son of Everett Walsh, and one of the defendants in this case, testified that he was not familiar with any particular "ridge line" upon the land. He explained, however, that every time someone plowed there would be a "dead furrow" between the fields, the location of which would depend upon wherever the plow had been on that particular occasion. He admitted that in some years there would be a "space" between his father's crops and those of the plaintiffs. He also asserted that even prior to the erection of the power poles in 1965 there was a dispute as to the exact location of the boundary line and that, as a result, his father would farm west of the boundary line established by Campbell and up to the point where he believed the true boundary line to be located. Richard Walsh, also a defendant and son of Everett Walsh, testified that there is not presently a discernible "ridge line" on the land. He supported his brother's testimony that they had always farmed the land according to their own belief regarding the location of the boundary line. Defendant Mary Walsh, widow of Everett Walsh, testified that when her husband first started to farm the land in Section 15 there was a grassy area between their field and that of the plaintiffs. She asserted, however, that there was no discernible "ridge line" between the fields. She also indicated that her husband had always farmed the land west of where the power poles are presently located, and the following verbatim transcript of her testimony is significant:

"Q.  Did you farm that land prior to 1965?
A.  Yes, we did.
Q.  And you're still farming it?
A.  Yes, we are.
Q.  Is it true, as Mr. Campbell testified, that you folks have been crossing over on each other?

A. Yes, we have.

Q. How many years has that been going on?

A. Well, to my knowledge, since '65, when the REA poles were in.

Q. But you are farming now the exact land that you farmed before '65?

A. *Yes, since we were married in 1934, in 1943, excuse me.*

Q. Since 1943?

A. Yes.

Q. Even if Mr. Campbell has been farming there, you go over and farm back on it?

A. Yes, we do." (Emphasis supplied.)

After having examined the testimony and the exhibits made a part of the record in this case, we have concluded that the judgment of the District Court must be affirmed. We agree with the specific findings of the trial court that the plaintiffs have failed to prove that their possession of the land in dispute was both *exclusive* and *continuous.* This determination is, we believe, justified in light of the evidence tending to show that in certain seasons Everett Walsh actually farmed upon the land in dispute. While the testimony of his sons Daniel and Richard as to that particular fact may be somewhat suspect because of their age during the critical years of plaintiffs' alleged adverse possession, nevertheless there is basic credibility to that part of the testimony of his widow, Mary Walsh, wherein she indicated that her husband had carried out farming activities upon the land in dispute long before the power poles were erected in 1965, in fact, as early as 1943. While it is true that the testimony of Mary Walsh is in direct conflict with the testimony of certain of plaintiffs' witnesses, nevertheless this court in evaluating the testimony of Mary Welsh, must give weight to the rule that on an appeal of an action in equity, when credible evidence on material questions of fact

is in conflict, this court will consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other. State v. Cheyenne County, 123 Neb. 1, 241 N. W. 747 (1932); Shirk v. Schmunk, *supra*.

We believe there is ample evidence in this case to establish the fact that the plaintiffs' possession of the land in question was not exclusive or continuous. Furthermore, in light of the fact that the land in dispute was not enclosed, which would have been of assistance in determining the precise boundaries of the disputed property, we believe, and the record confirms the belief, that the farming activities of the parties fluctuated back and forth across the land in dispute over the years. We conclude, therefore, that the plaintiffs in this case failed to meet their burden of proving that their possession of the land in dispute was exclusive and continuous, and therefore the judgment of the District Court must be affirmed.

AFFIRMED.