JOHN J. MARFISI, APPELLANT, V. ALFRED SPAGNOLA,
APPELLEE.

248 N. W. 2d 24

Filed December 15, 1976. No. 40745.

Wilbur C. Smith and Eileen A. Hansen, for appellant.

Robert G. Spagnola, for appellee.

Heard before WHITE, C. J., BOSLAUGH, NEWTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

This is an appeal in an equity action in which the plaintiff sought a decree from the District Court setting aside a purported bill of sale by which the plaintiff allegedly transferred all right, title, and interest in the Hollywood Spots-Lite Company to the defendant, requiring the defendant to return the assets and records of the company to the plaintiff, and restraining the defendant from doing business as the Hollywood Spots-Lite Company.

The issue was tried before the District Court. On February 13, 1976, the District Court, in its decree, found that the bill of sale was a valid instrument and as such transferred all right, title, and interest to the assets, good will, trade name, patents, and patent rights held in connection with the operation of the Hollywood

Spots-Lite Company, and dismissed the plaintiff's petition. The plaintiff appeals. We affirm the judgment of the District Court.

In an appeal in an equity action, it is the duty of this court to try issues of fact de novo upon the record and to reach an independent conclusion thereon without reference to the findings of the District Court. Kolc v. Krystyniak, 196 Neb. 16, 241 N. W. 2d 348 (1976); Campbell v. Buckler, 192 Neb. 336, 220 N. W. 2d 248 (1974). However, when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of facts rather than the opposite. Pinney v. Hill, 191 Neb. 844, 218 N. W. 2d 212 (1974); Parkhurst v. Parkhurst, 184 Neb. 687, 171 N. W. 2d 243 (1969).

The sole factual determination presented in this case is whether or not the plaintiff did knowingly and willfully execute a bill of sale, which operated to transfer all his right, title, and interest in the Hollywood Spots-Lite Company to the defendant. We find that he did.

The plaintiff, in 1949, started up a small one-man business known as the Hollywood Spots-Lite Company. Prior to 1949, the plaintiff had been in the ballroom business in Omaha, Nebraska. The plaintiff's company, which operated out of a location in North Omaha, manufactured a revolving, global light fixture which cast off beams of colored light, and which was used primarily by skating rinks and ballrooms. The plaintiff had developed this device over a period of 7 years and had received a patent on it.

Around 1959, the defendant, the plaintiff's nephew by marriage, began helping the plaintiff in his business. Over the next 4 years, the defendant spent several evenings per week and many Saturdays assisting his uncle.

On June 3, 1963, the plaintiff's wife of 40 years died

of a sudden heart attack. The plaintiff was admitted to the hospital that day and remained there for 2 days. On June 4, 1963, the plaintiff while in the hospital, asked Samuel Caniglia, who was at that time a practicing attorney in Omaha, to prepare a bill of sale for the transfer of the Hollywood Spots-Lite Company to the defendant. Caniglia was also directed by the plaintiff to prepare a will at the same time. Caniglia testified that the plaintiff told him to omit any reference to his business in the drafting of the will because the bill of sale had taken care of this. The bill of sale recited a consideration of one dollar, and this sum was handed over by the defendant to the plaintiff's brother, who in turn handed the money to the plaintiff. Caniglia testified that both documents, the bill of sale and the will, were signed by the plaintiff in his presence and in the presence of two nurses acting as witnesses.

The plaintiff testified that he signed the will on June 4, 1963, at the hospital, but denied having signed the bill of sale. In his pleadings, the plaintiff states that the signature on the bill of sale appears to be his, but that he recalls only the execution of the will.

Several months after his wife's death and the execution of the bill of sale, the plaintiff accompanied the defendant to the North Side Bank in Omaha, and placed the defendant's signature on the company account. In 1964, the plaintiff helped the defendant move the business from its location in North Omaha to the defendant's basement. The defendant offered the plaintiff a key to his house at this time, but the plaintiff refused, not wanting to be involved if anything would be missing from the defendant's house.

In 1965, the plaintiff wrote to the Danbury State Fair, a former business customer of the company. In that letter he stated:

"* * * I would like to call your attention to a change that has been made in the management of the firm, about 20 months ago my wife passed away with a sud-

den heart attack and as I am now near 76 years of age it has been such a shock that I did not feel I could carry on the business.

"For the past 8 years I have had one of my nephews helping me and he is a very good mechanic so I decided to turn the business over to him and he has done a very fine job of carrying on the same policy and service as I had done.

"He has asked me to write you personally on account of our past contact * * *."

In 1969, the plaintiff had another will made. Caniglia testified that the plaintiff again instructed him to make no reference to the business since it was the defendant's and had been transferred to him a long time ago.

The plaintiff admitted on cross-examination that he has not personally constructed a "Spots-Lite" since the execution of the bill of sale in 1963. He also admitted that, since 1963, he has written no further checks on the company account. There was testimony that for 6 to 9 months after his wife's death, the plaintiff did not even come around or show up at the business location.

In late 1964, the plaintiff purchased a 1965 automobile, placed title in Hollywood Spots-Lite Company, and licensed it each year. The defendant testified that after 1963, he continued to let the plaintiff deposit money received from company sales in the North Side Bank. He stated that he did this because the plaintiff enjoyed going to the bank, and it gave him something to do.

The defendant testified that in 1971, the plaintiff told him that he no longer wanted to make deposits and that he then had the company business account transferred to the Center Bank due to its more convenient location. The North Side Bank made out a cashier's check in the amount of $2,576.17 to the Hollywood Spots-Lite Company. This check was endorsed and deposited by the defendant. The defendant testified that he offered to have the plaintiff co-sign the new account,

but that he refused, stating that he wanted no part of it; that it belonged to the defendant as the sole owner; and that he could do with it as he saw fit.

In 1971, the defendant gave the plaintiff a check for $150 from the company account at the plaintiff's request. The plaintiff accepted the check, endorsed it, and cashed it. The plaintiff testified that he periodically received money from the company account around Christmas time, or on other occasions, an example of one being when he wanted to go on a fishing trip.

The above-reviewed evidence supports a finding that the plaintiff did knowingly turn over his business to the defendant on June 4, 1963. In his brief, the plaintiff intimates that undue influence surrounds the execution of the bill of sale, pointing out the traumatic time in the plaintiff's life that the bill of sale was executed - in a hospital, while the plaintiff was in shock and grief following the sudden death of his wife of 40 years, and the fact that the defendant was the plaintiff's nephew by marriage and they had worked closely together for a number of years.

The plaintiff's turning over of his business to a nephew, who had worked with him and helped him in that business for the previous 4 years, is not an unnatural disposition. The plaintiff's attorney was present at the time the bill of sale was executed, and the plaintiff's attorney drafted the bill of sale.

Even if the plaintiff's condition at the time of execution could be legitimately questioned, there remains the lengthy continued relationship between the parties following the execution of the bill of sale, which contained the numerous factors, mentioned previously, all indicative of an intention by the plaintiff for the defendant to have the business and an acknowledgment on the plaintiff's part of the defendant's ownership. The plaintiff was not moved to assert his claim against the defendant until many years after the bill of sale was executed. We note that a family argument between the

parties seems to have precipitated the events which led to this lawsuit.

It is true that the change in ownership between the parties was not as clean or clear-cut as might be expected between total strangers. Given, however, the facts that the parties were related, had worked together for a number of years, and that the plaintiff was quite elderly during this period, we do not find it unusual or inconsistent with the defendant's position that the plaintiff received minor sums periodically from the business account, was allowed to remain on the company account until 1971, was allowed to make company deposits, and was in other ways permitted to relate to the business.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.