F. W. JACKMAN, GUARDIAN OF RUTH A. JACKMAN; HERBERT LEE JACKMAN AND MARGARET ANN JACKMAN, HUSBAND AND WIFE; RICHARD LEROY JACKMAN; AND GERALD SCHROEDER AND RAMONA SCHROEDER, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES, v. DAISS, INC., A NEBRASKA CORPORATION; OBERT F. DAISS AND MARGARET E. DAISS, HUSBAND AND WIFE; DAVID SEILER AND KATHRYN SEILER, HUSBAND AND WIFE; JAMES SEILER AND DEBORAH SEILER, HUSBAND AND WIFE; NANCY FOCKEN AND DARREL FOCKEN, WIFE AND HUSBAND; ANNETTE SEILER; KEVIN SEILER, A MINOR; GEORGE H. SEILER, GUARDIAN OF KEVIN SEILER; DOLORES SVOBODA AND DON T. SVOBODA, WIFE AND HUSBAND; DANIEL GENGENBACH AND EVELYN GENGENBACH, HUSBAND AND WIFE; AND ANNA GENGENBACH, APPELLEES AND CROSS-APPELLANTS.

292 N. W. 2d 572

Filed May 20, 1980. No. 42819.

Kay and Satterfield and H. L. Jackman and Richard H. Roberts, for appellants.

McCarthy, McCarthy & Vyhnalek, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

BOSLAUGH, J.

This is an action brought under Neb. Rev. Stat. § 34-301 (Reissue 1978) to determine the boundaries to the northeast quarter of Section 10, Township 9 North, Range 38 West of the 6th P.M. in Perkins County, Nebraska. The plaintiffs are the owners and tenants of the northeast quarter of Section 10. The defendants are the owners or parties otherwise interested in the other land in Section 10 that is adjacent to the northeast quarter.

Only the boundary between the northeast quarter and the southeast quarter of Section 10 remains in dispute and is involved in this appeal. There is a sandy area and a tree area near the east line of the section which has not been farmed by any of the parties. The controversy here concerns the boundary line west of the trees and the sandy knoll or "go back" area.

The plaintiffs claim the boundary has been established by both adverse possession and acquiescence. They allege that the boundary followed an old fence line situated approximately 117 feet south of the line established by the government survey. There appears to have been no dispute concerning the boundary until August 1975, when the defendants erected a new fence along the line established by the govern-

ment survey. The plaintiffs then brought this action.

The trial court found that, since 1938, the farming line between the quarters had been generally in the area claimed by the plaintiffs and established the boundary along a line 91 feet south of the government survey line except for the area near the east line of the section. At that point the boundary runs north to a line established by the Cook survey and follows that line to the east line of the section.

The plaintiffs have appealed and the defendants have cross-appealed.

The evidence is undisputed that there has been a "corner post" located near the center of the section that has been in place for many years. This post is not at the center of the section as determined by the government survey, but is located 117 feet south and 17 feet west of the center as determined by the government survey. The fence between the northwest and southwest quarters, and the fences between the east half and west half of the section all tie into this post. There is some evidence that, many years ago, a fence between the northeast quarter and the southeast quarter ran east from the "corner post."

There is a wire gate in the fence which runs north from the corner post. This gate, which is now approximately 25 feet in width, is fastened to the corner post and may be secured by wire loops to a fence post located approximately 26 feet north of the corner post. Apparently, the trial court used the fencepost now located at the north end of the gate opening as the point at which the boundary should be established.

The evidence shows that the wire gate has varied in width from time to time and there is evidence that at times it did not exceed 16 feet in width. The width of the gate is of some importance because Hank Seiler, a tenant who farmed the southeast quarter, claimed that he came through the gate

from the northwest quarter, placed his equipment in the ground, and began farming west to east across the southeast quarter.

There is considerable evidence that, since 1958, the farming line between the quarters has been along a line approximately 16 feet north of the corner post. Gerald Schroeder, who has farmed the west half of the northeast quarter since 1970 and has farmed the east half of the quarter since 1974, and Jim Stivers, who helped his father farm the west half from 1958 to 1970, both testified that they farmed the west half south to a line approximately 15 or 16 feet north of the corner post. Neither Schroeder nor Stivers farmed with relation to the gate. They both testified that they consistently farmed to a line running approximately 16 feet north of the corner post. In addition to this testimony, the survey made by Virgil Cook on April 21, 1975, established the farming line from 117 feet to 110 feet south of the government survey line. Although the government survey showed the quarters to be approximately equal in area, the tax receipts which are in evidence show that the southeast quarter is a smaller quarter having a deficit of 6 acres. This corresponds with field measurements made by the Agricultural Stabilization and Conservation Service. Also, the aerial photographs which are in evidence tend to support the plaintiffs' claim and corroborate the testimony of the plaintiffs' witnesses.

Since this is an action in equity, it is the duty of this court to try the issues of fact de novo on the record and reach an independent conclusion thereon without reference to the findings of the District Court. Neb. Rev. Stat. § 25-1925 (Reissue 1975); *Campbell v. Buckler,* 192 Neb. 336, 220 N.W.2d 248 (1974).

As we view the record, the evidence as a whole supports the findings of the trial court generally except that the boundary line should commence at a

point 16 feet north of the "corner post" and 101 feet south of the government survey line and then run east until the sandy knoll or "go back" land is reached. At that point the boundary should run north to the line established by the Cook survey and then east along that line to the east line of the section.

The judgment of the District Court is modified to provide that the boundary line between the northeast quarter and the southeast quarter of Section 10 is determined to be as follows: Commencing at a point 16 feet north of the corner post and 101 feet south of the iron pin shown on exhibit 8; running thence east on a line 101 feet south of the survey line to a point designated as 7 plus 00 on said exhibit; running thence north 50 feet to the dotted line on said exhibit 8; running thence east along the dotted line to the east line of the section at a point 45 feet south of the survey line. As so modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.