Littlejohn v. Fink.

LEWIS W. LITTLEJOHN, APPELLEE, v. JOHN FINK, APPELLANT.

FILED NOVEMBER 25, 1922. No. 22122.

1. **Boundaries.** The boundary lines between two quarters of a section of land are ascertained by drawing straight lines between the opposite quarter-section corners.

2. ——: LOST CORNER: REESTABLISHMENT.. Where the quarter corner of a section bordering on the north or west township line is lost, and its location cannot be identified, it is reestablished by first determining the section corners on the side where the lost corner is sought to be reestablished, and then locating the quarter corner at a point on a line connecting the section corners so as to divide the actual distance between the section corners in the same proportion as the field notes purport to divide it.

3. ——: GOVERNMENT CORNERS. Government corners fixed by a United States surveyor at the time of the original survey will control the field notes of the survey made at the time, and will control the field notes or courses and distances of any subsequent survey.

4. Evidence examined, and *held* to present an issue of fact to be submitted to a jury.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Reversed.*

*Morrow & Morrow,* for appellant.

*A. R. Honnold* and *Robert G. Simmons,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH and DAY, JJ., REDICK and SHEPHERD, District Judges.

DAY, J.

This is an action in ejectment to recover the possession of a strip of land containing about 27 acres along the boundary line between the S. W. ¼ and the N. W. ¼ of section 2, township 22, range 55, in Scotts Bluff county.

At the close of the testimony, on motion of the plaintiff, the court directed the jury to return a verdict for the plaintiff, which was done, and thereafter judgment was rendered for the plaintiff. Defendant appeals.

The defendant contends that there was a conflict in the evidence upon the issues of fact, and that, therefore, the court erred in not submitting such issues to the jury. The record shows that the plaintiff is the owner of the S. W. ¼ and the defendant the owner of the N. W. ¼ of said section. The dispute betwen the parties arises over the proper location of the dividing line between their respective quarter sections.

For the purpose of a clearer understanding of the claims of the respective parties and the discussion of the evidence, we present herewith a diagram, to which reference will be made. The strip of land in dispute may be designated by the lines connecting the points A, B, C and D on the diagram.

There is no dispute in the record as to the location of the southwest and southeast corners of the section. Both parties agree that the original government corners are properly located at the points designated on the diagram by the letters N and R. There is a controversy as to the proper location of the northeast and northwest corners of the section, and also as to the location of the east and west quarter corners. The courses and distances of the original field notes place the northeast corner of the section 79.60 chains north of the southeast corner, designated on the diagram by the letter Z; and, in like manner, the northwest corner is located 79.87 chains north of the southwest corner at the

point indicated by the letter X. Straight exterior lines connecting the points N, R, Z and X form a parallelogram coinciding with the courses and distances as shown by the original field notes. The testimony shows that, when this section, together with other lands in the immediate vicinity, was settled upon, the corners as above indicated were taken to be the true corners of the section. The settlers within this section built their fences, laid out roads, cultivated their lands, and made improvements thereon, upon the theory that the section embraced land as indicated by the field notes. The defendant in entering his land located his northwest corner at the point X, and built his north fence along the line from X to Y. He also constructed a fence along his south line from A to B, approximately 40 chains north of the south boundary line of the section. The west quarter corner as fixed by the field notes was at a point 40 chains north of the southwest corner of the section, and 39.87 chains south of the northwest corner of the section. The field notes also located the east quarter corner 40 chains north of the southeast corner and 39.60 chains south of the northeast corner of the section. On the diagram these quarter corners are located at the points E and A. The settler upon the southeast quarter built his north fence on the line between the points E and B, and also built his house at the point indicated by a square a few rods south of this fence line, and a few rods west of the line connecting the points R and Z.

In 1906 the United States reclamation service made a survey and plat of this section, together with many others, for the purpose of determining what lands were under the Tri-State canal. These surveyors, in examining the land in this section, found what they concluded to be the original government monuments designating the northeast and the northwest corners of the section. These monuments were located at the points J and G, over 900 feet south and a few rods west of the points indicated by

Z and X. The testimony shows that these surveyors were unable to find any original east and west quarter corners; that they thereupon proceeded to locate the quarter corners along the lines connecting the points R and J, and N and G, according to the proportional rule, at the points K and M, and erected concrete blocks to designate these corners. The distance between the points R and K is 2,182 feet, and from K to J, 2,160 feet. The distance between the points N and M is 2,162 feet, and from M to G, 2,156 feet. It will be observed that the section, as fixed by the reclamation survey, is considerably short of a full section. After the reclamation survey, the defendant, on the theory that the lines made by such survey were the true boundaries of the section, established his south boundary along the line indicated by the letters D and C.

The issue to be determined turns upon the proper location of the east and west quarter corners, as the line connecting these two points forms the boundary line between the north and south half-sections.

The field notes of the original survey show that the east and west quarter corners of this section were established at the points indicated on the diagram by the letters E and A, and monuments consisting of mounds, pits and stakes were erected. The field notes also show that the northeast and northwest corners were established and pits, mounds and stakes erected.

Upon the trial there was testimony which tended to show that the original government corners were located at the points designated by the letters Z and X on the diagram, and, while there is no positive testimony that monuments such as the field notes describe were ever found at these corners, still we think the evidence sufficient to present an issue of fact for the jury's determination as to whether the original corners were located at the points Z and X. In support of this view, some of the early settlers testified that they were considered as original corners; the original entrymen, the defend-

ant among them, made their entries and proved up on their lands upon the theory that these points were original corners; and, in addition, the corners thus designated are at the points where the field notes would place them. On the other hand, the reclamation surveyors who surveyed this section, as well as other witnesses, testified that pits and mounds tallying with those described in the original survey were found at the points J and G, and in their opinion these were the original corners.

There is this further fact which must be considered. Plaintiff's witness Reige testified that in 1885 he saw a quarter corner on the east line of the section, the marking corresponding with the monuments erected by the original surveyors; that later he was present with McCoskey, who surveyed the line, and that McCoskey located the east quarter corner at the point E where the witness had previously seen the original pits and mounds. McCoskey testified that at that time he located the quarter corner at the point E, but later concluded he was mistaken. The reclamation surveyors found no east quarter corner, and therefore located the east quarter corner according to the proportional rule at the point K on the diagram. If the east quarter corner be established at the point E, and the west quarter corner at M, the boundary line would be the line connecting these two points, and a part of the land in controversy would belong to the plaintiff, and a part to the defendant.

There is no testimony that the original west quarter corner was found. That corner would be located under the proportional rule, hereinafter considered, at the point A or M, depending on whether the northwest corner of the section be established at X or G.

The plaintiff argues that, in any aspect which may be taken of the evidence as to the location of the disputed corners, the trial court was right in directing a verdict for the plaintiff. It is his contention that the southeast and southwest corners being known original corners, and conceding that the quarter corners are lost,

the quarter corners are established by measuring north from these known corners 40 chains as indicated in the field notes, and establishing the quarter corners at such points, thus leaving any loss or gain upon the north quarter section. This rule would throw the disputed land in the southwest quarter of the section. Although there is respectable authority sustaining this contention—one of the leading cases being *Knight v. Elliott,* 57 Mo. 317—we think that the weight of authority, as well as the better reason, is to the contrary.

The rule promulgated by the general land office, as well as text-books on the subject of surveying, and the weight of judicial decisions sustain the view that, where the quarter corner of a section bordering on the north or west township line is lost, and its location cannot be identified, it is reestablished by first determining the true section corners on the side where the lost corner is sought to be reestablished, and then locating the quarter corner at a point on the line connecting the section corners, so as to divide the actual distance between the section corners in the same proportion as the field notes purport to divide it. Hawes, Manual of United States Surveying, p. 128; General Land Office Rules, Revision of June, 1909, Rule 49; Hodgman, Land Surveying, p. 282; *Martz v. Williams,* 67 Ill. 306; *Jones v. Kimble,* 19 Wis. 452; *James v. Drew,* 68 Miss. 518. While possibly not necessary to a decision of the case, the rule is recognized in *Brooks v. Stanley,* 66 Neb. 826.

In passing, it may not be amiss to say that the proportional rule applies only to sections bordering on the north or west of the township, and that any excess or deficiency arising in an interior section is divided equally.

The rule of law is well settled that government corners fixed by a United States surveyor at the time of the original survey will control the field notes of the survey made at the time, and will control the field notes or courses and distances of any subsequent survey. Such corners, if identified by proof, are the best evidence of

In re Estate of Martin.

where the line should be. *Knoll v. Randolph,* 3 Neb. (Unof.) 599; *Harris v. Harms,* 105 Neb. 375; *Halley v. Harriman,* 106 Neb. 377.

Applying the proportional rule to the present case, and assuming for the purpose of illustration that the northwest corner of the section is located at the point designated G, the west quarter corner would be determined as follows: As 5,271.53 feet (the length of the line as indicated by the original field notes) is to 4,318 feet (the length of the line of the new survey), so 40 chains or 2,640 feet (the length of the plaintiff's line as called for in the field notes) is to 2,162 feet (the length of the line under the new survey). Omitting some small fraction, the west quarter corner would, therefore, be placed 2,162 feet north of the southwest corner, and 2,156 feet south of the northwest corner.

Considering all the testimony, we think there is such conflict that the issues should have been submitted to the jury; and we conclude that the trial court erred in peremptorily instructing the jury to find for the plaintiff.

REVERSED AND REMANDED.

MORRISSEY, C. J., and REDICK, District Judge, dissent.