STATE OF NEBRASKA, APPELLEE, V. CHEYENNE COUNTY: THEODORE M. POPPITZ ET AL., APPELLANTS.

FILED MARCH 31, 1932. No. 28165.

*R. O. Canaday* and *F. E. Williams,* for appellants.

*C. A. Sorensen, Attorney General, George W. Ayres, Clifford L. Rein* and *R. P. Kepler, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

(1)

Goss, C. J.

The state, as the owner of section 16, township 16 north, range 51, west of the 6th P. M., in Cheyenne county, brought this suit to have the disputed boundaries of the section adjudicated. The land is a school-land section. The proceeding is provided for by a special statute (Comp. St. 1929, sec. 34-301) authorizing the district court, as in equity, to ascertain and establish permanently corners or boundaries which are lost, destroyed or in dispute. The statute also provides: "Either the plaintiff or the defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years."

The state, in its petition, specifically described by metes and bounds the lands claimed by it as comprising its section 16 by reference to monuments established at the corners thereof by an official survey made in 1928 by E. C. Simmons, state surveyor. All adjacent owners in adjoining sections were purported to be named as defendants, as was also the county, because of roads established or likely to be established. Most of the defendants either filed disclaimers or defaulted, so that the only parties interested in the appeal are the state, as appellee, and Theodore M. Poppitz and Anna Poppitz, husband and wife, as appellants.

These appellants answered, admitting they own the northeast quarter of section 17 (which adjoins the northwest quarter of section 16). They specifically denied that the Simmons survey was an official survey of section 16, or correctly established the boundaries. They alleged that the original government survey, made in 1869, located the boundaries between the sections approximately 40 rods east of the line established by Simmons, that said government location has been used and recognized for 60 years, and that the public has used the said line as a public highway. The answer further alleged that plaintiff, for more than 20 years, has occupied and used a full section

east of said public highway, claiming the same to be section 16, has never claimed any land lying west of said highway, has always acquiesced in said highway as the boundary, that defendants have owned the northeast quarter of section 17 for 15 years, they and their predecessors in title have owned and occupied it for more than 40 years, that relying upon all these facts defendants expended large sums, constructing a dwelling-house, other buildings, and fences, and improving the land, of all of which they will be deprived if plaintiff have judgment; that by reason thereof plaintiff is estopped from asserting a boundary line between section 16 and the land of defendants according to the Simmons survey or at any other place than that at which it has been recognized and acquiesced in.

The reply was a general denial. The findings and judgment were for plaintiff. The decree gave appellants six months to remove their buildings.

Without in any way deciding or undertaking to pass upon the question of the power of the state to estop itself in such a matter as is here involved, it is sufficient to say there was no proof upon which a judgment of estoppel against the state could be based. "Where a party pleads and relies on an estoppel, the burden of proof is upon him to establish the facts upon which the estoppel is based." *Parkins v. Missouri P. R. Co.*, 76 Neb. 242. See 21 C. J. 1250. If the pleading of the appellants be considered as a plea for title by adverse possession, a sufficient answer to that theory is found in the elementary proposition that no title by adverse possession can be acquired against the state. *Topping v. Cohn*, 71 Neb. 559. "In the absence of a provision making the state subject to the statute of limitations, no title by adverse possession can be acquired against the state, no matter how long continued." 2 C. J. 213, 214, citing many cases from the supreme court of the United States and from thirty states.

As to the allegation of appellants that the state had used a full section of land east of the highway claimed by them as the boundary between sections 16 and 17, the

evidence of the state's lessee of the school section shows that he had leased this land for the past six years, that he had measured it, and that it was about 160 acres short of the usual 640 acres.

The court accepted as correct the survey of the state surveyor, E. C. Simmons, who is now dead, but an exemplified copy of the record of whose survey was received in evidence. This survey shows that Mr. Simmons, not finding any interior government monuments or corners in section 16, took as his starting points on the east and south boundaries of the township the outer township corners of sections 12 and 33, respectively, as established in a survey made by L. H. Bordwell, county surveyor of Cheyenne county, and examined and criticized in 1919 by B. W. Benson, deputy state surveyor. Without going into details, it may be said that the effect of the Simmons survey is substantially the same as that of Bordwell. By these surveys the real boundary line between sections 16 and 17 is 40 rods west of the line claimed by appellants. This takes in about 40 acres and most of their buildings.

L. H. Bordwell, 85, now of Spokane, testified by deposition. He went to Cheyenne county in the spring of 1874 and lived there until December, 1929. He was a surveyor and for several terms was county surveyor. Twice he surveyed township 16, once in 1912 and again in 1918. When he first knew the land it was prairie. It was burned over several times before it was settled. The fires burned up all the vegetation and all government stakes lying on the ground to mark the sections. When he made the 1918 survey he first went carefully over the whole township to discover marks of interior section lines or of any section lines, but, being unable to find evidence of the original survey, he took the government field notes as the next best evidence of the survey. He ran every section line in the township by orders of the county commissioners as they had declared these lines to be public roads. His survey of section 16 indicates that it has 637.9 acres. As we have heretofore indicated, the difference in the Bordwell and Simmons surveys are slight, so far as they affect

the line between the parties here. The differences are due to the fact that Simmons, as he states in his field notes, did not follow the Bordwell line on the north side of the sections involved but agreed with Benson's terminal points as shown in his survey of the parallel.

Charles H. Gardner, for the last nine years county surveyor, had made surveys in the township at different times but had never been able even with the government field notes to find any interior government corners. By the use of the government field notes he took the Simmons survey and methods and established the corners of section 16 at the same places.

Witnesses were produced by appellants who, 40 years earlier, as young boys, attended a school located a little east and north of the point appellants claim as the southwest corner of section 16. They were produced by appellants to furnish evidence of a government corner there. The best was probably William Gustafson, who testified there were at the time "one or two holes there, I couldn't say whether they were pits or not. * * * The rock was in one of the holes." There were fire guards there and the holes were about in the center of where the fire guards crossed. He also testified to fire guards and four pits and a mound with a stake located at the southwest corner of section 17; and that 40 years ago the stake had the numbers of the four sections on it, "20, 17 and 18 and 19." The stake was larger than the one the butt of which was dug up there last fall when Mr. Chaloupka was surveying and showed that it had rotted away. The fire guards were still visible last fall. He also remembers that a lime rock marked the northwest corner of the northeast quarter of section 17 when he was a boy and first came to the country in 1889. He last saw it about 20 years ago, but was present when Mr. Chaloupka dug up a lime rock at about the same location. He also testified there was a lime rock that marked the northeast corner of section 17 and fire guards there 40 years ago; that the north and south road between sections 17 and 16 has been used possibly 30 years, but he saw the

rock there about 20 years ago. He was corroborated by two brothers, Ed Sanders, 55, and Emmons Sanders, 55, who had lived in the neighborhood 45 years. W. F. Chaloupka, a surveyor of experience, surveyed certain features of the land and made a plat of section 17 for appellants, which is in evidence. He accepted the corners pointed out by the above witnesses and corroborated their testimony as to present conditions. He testified that they found a small piece of a rotted stake a little below the surface of the present ground. It was a sharpened stake. At the northwest corner of the northeast quarter of section 17, he "found evidence of three old rotted posts very close together and a small piece of stone * * * I should judge perhaps four inches square * * * located right in among the post butts * * `* in the ground perhaps ten inches * * * on a line with the fence running north and south through section 17."

The situation as now disclosed by the record we have recited is quite conflicting. From the evidence of Simmons, Bordwell and Gardner, it seems almost incredible that there could have been established as government corners all the ones that were pointed out as such corners by the testimony on behalf of appellants, or that through all the years they could have existed as such established corners without discovery by surveyors and by county officials. Certainly they could never have been established at these points by use of the government field notes. These are the controlling rules: (a) Government corners fixed by the govenment surveyor at the time of the original survey furnish the best evidence of the true location of the corners; (b) in the absence of such corners, or of satisfactory proof of their location, the field notes of the government survey (including its plats, if any) furnish *prima facie* evidence from which the true corners and lines may be located. *Harris v. Harms,* 105 Neb. 375; *Halley v. Harriman,* 106 Neb. 377; *Littlejohn v. Fink,* 109 Neb. 282.

In this state of the proofs the trial judge found that many years ago L. H. Bordwell, county surveyor, had

surveyed (as shown by his field notes that had been received in evidence in rebuttal) for the location of a school site near the southeast corner of section 16. The field notes indicate that the survey was made in 1916 and prior to his 1918 survey, about which he testified in this case, and at a time when he did not know of any government corners or lines in the section; that he started farther south in the township, and then, in his survey, went to various points involved in the instant case. Twice in the course the field notes recite certain "supposed" corners. So the trial court found that Bordwell was not then sure he had found the southwest corner of section 16; found that the testimony of witnesses for defendants, who claimed to have seen and known the government corners at the southwest corners of sections 16 and 17 is unreliable; that the corner post found by Mr. Chaloupka at the southwest corner of section 17 was probably the corner post placed there by Mr. Bordwell, when making the schoolhouse survey. The court found that it would be unsafe to rely upon the testimony of witnesses for defendants that the post found by Chaloupka at the southwest corner of section 17 was an original government stake; and found that the stone discovered by Chaloupka "at the quarter section corner on the north line of section 17 could easily have been placed there by persons, who in the early days were attempting to mark their lands." The court therefore found from all the evidence that there were no interior government corners placed by the original government surveyors in township 16, that there were only three exterior government corners on the north boundary of the township, that they are in the northeast corner of the township, and that Simmons, Bordwell and Gardner used the proper methods of proportioning in determining the section lines.

"On appeal in equity cases, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying." *Yardum v. Evans,* 120 Neb. 699.

We reach the same conclusion as that reached by the

district court. In the decree below the appellants were allowed six months to remove from section 16 such of their buildings as are over the line of that section as fixed by the decree. In view of the justiciable merits of their appeal, we direct that the time for such removal be extended to six months after the issuance of mandate herein. The judgment of the district court is

AFFIRMED.