LAWRENCE *et al. v.* BYRNES.

(Division A.  Feb. 12, 1940.  Suggestion of Error Overruled March 25, 1940.)

[193 So. 622.  No. 33969.]

**T. J. Lawrence**, of Vicksburg, and **Engle & Laub**, of Natchez, for appellants.

Luther A. Whittington, of Natchez, for appellee.

E. S. and J. T. Drake, of Port Gibson, for appellee.

Argued orally by **Chas. F. Engle**, for appellants, and by **J. T. Drake** and **Luther A. Whittington**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On June 4, 1821, the predecessor in title of appellants received a patent from the United States for fractional Section 24 in Tp. 12 of R. 4 E., Claiborne County, the quantity being recited as 136 acres. On December 12, 1821, appellee's predecessor in title received a patent for Section 14 in the same township and range. The boundary line between these sections is a stream called Bayou Pierre.

Until forty or fifty years ago the channel of this stream shifted from time to time. There seems to have been three surveys of these sections by the government. The last was made in 1847. Looking to the field notes of this survey and to the plat made in pursuance thereof, it is found that from the southwest corner of Section 24 running approximately north, it was 48 chains to the channel of the stream as then located, and the acreage shown for the section was 170.78. A plat was made also in 1829, and on this the distance from the southwest corner of the section to the channel is given as 54 chains, and the contents of the section 205.73 acres. The first plat apparently was made in 1826, but there are no field notes in the record relating to this plat nor does it give the measurement north from the southwest corner of Section 24. It gives the acreage of the section, however, as being 136, which corresponds with the recitals of the patent.

There was a partition proceeding among appellants of their lands in Section 24 adjacent to this stream in 1901, and when the survey was then made it was found that

the channel of the stream was only about 24 chains north of the southwest corner of Section 24, a shift of nearly 25 chains since 1848.

When the parties in partition, appellee not being a party thereto, made up their surveys and plats for a division among themselves, they proceeded upon the theory either (1) that the location of the thread of the stream in 1847 was the original location thereof in 1821, or else (2) that they were entitled to act upon the last survey and plat of the government which, as stated, was the one of 1847-1848. Accordingly, their plat for Lot 3 of Share 1 of the division among themselves was projected across Bayou Pierre, as it then existed, up to the position of the channel as it was located in 1847, thus forming between the channel as it was located in 1901 and the location of 1847 a tract roughly in the form of a triangle and consisting of about 30 to 35 acres; and it is this tract which is the subject of the litigation in the present case. It may be remarked at this point that taking the location of the channel as it existed in 1901, there was still left in Section 24 approximately 175 acres, whereas appellant's patent called for 137 acres.

The primary question in the case is this: Where was the channel of this stream located in 1821? The burden was upon appellants as complainants in the trial court to make this proof, but appellants were unable to make it. When the patentees obtained their patents from the government, their rights became vested and fixed as of that date and could not be affected by any subsequent survey or corrected survey by the government. 50 C. J. pp. 913, 914. The plat of 1847-1848 formed no basis for the determination of the proprietary rights between the owners of the two sections mentioned, for if the stream in 1821 was located at a different point as compared with that shown on the plat of 1847-1848, the latter had no effect whatever on the title. What this evidence shows and all that it does show is that between the high bluffs to the north of the location of the stream in 1829 and

the high bluffs south of the location of the channel in 1901, a distance north and south of about 25 chains, this channel had been shifting about from time to time up until about forty or fifty years ago, and no man knows where it was in 1821, save that such evidence as there is indicates that it was considerably south of its location in 1848.

Each side attempted to show adverse possession by actual occupancy of the triangular tract, but in this both sides failed. But appellants argue that inasmuch as they have been in the actual adverse possession for more than ten years of that part of Lot 3 of Share 1, the plat and description of which was made of record by the decree in partition in 1901, which lies south of the channel, as it then existed, and where it has continued to exist without change since that time, their adverse possession extends by construction to the involved triangular tract across the stream which was by the plat and decree aforesaid shown as a part of said Lot 3 of Share 1. The difficulty in the path of appellants in respect to this contention is that appellee was, and has been, throughout the same period in the actual occupancy and possession of a large and substantial part of Section 14 under a recorded deed to him as the owner of the entire section so that his constructive possession would extend to all of the section, wherefore we would simply have a case of over-lapping constructive possession, which, of course, does not aid either party as against the other.

Affirmed.