## No. 17,244.

### YAKES ET AL. *v.* WILLIAMS ET AL.
(270 P. [2d] 765)

Decided May 17, 1954.   Rehearing denied June 7, 1954.

Mr. MANSUR TINSLEY, Mr. ROSCOE PILE, Mr. BERNARD P. O'KANE, for plaintiffs in error.

Mr. GEORGE J. ROBINSON, Mr. RAY A. CURRAN, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Following May 14, 1951, defendants in error, the Williams constructed a cabin approximately sixteen by twenty feet on what was approximately one acre of ground, which included parts of lots 34 and 35 and all of lots 36 to 39 inclusive, in block one, Brereton's Addition to Twin Spruce Park in Jefferson county, Colorado. This plot of ground originally was a part of approximately five hundred acres of timbered mountain land owned by Mrs. Brereton and she still owned much of the ground in the area of this plot.

On the date above mentioned Williams and his wife received a deed for the plot from Goodspeed, who apparently had "guessed" off a corner at which there had been some wooden stakes, and later an iron pipe, and without any survey or exact knowledge as to boundaries, the Williams had posted an uncertain number of "no trespass" signs on some trees, especially one on the supposedly south line of their property. The area generally contained timber suitable for mine props and timbers. Being in need of some extra funds, Mrs. Brereton, living in Denver, made it known to Frank Yakes, one of the plaintiffs in error, that she would like to sell some of the timber, thus thinning out the trees for the better growth of the younger and smaller trees. Yakes told her that he would contact a man who would be interested in buying and thereupon he contacted DiSalvo, another plaintiff in error, who accompanied Yakes to the area, and was given the general idea where the trees would be cut, all presumably on Mrs. Brereton's land. DiSalvo contacted Holtenbeck, another plaintiff in error, for the cutting and removing of the timber to a road which was near the property involved. Holtenbeck entered upon the property in the wintertime with snow on the ground and removed the timber. Before Holtenbeck had completed his contract, Lowell Williams learned of what was

happening, went to the property and had discussions by telephone and personally with all parties involved. He then went to the district attorney and this suit for trespass was instituted against all of the plaintiffs in error by a complaint filed June 27, 1952, in which complaint it was alleged that on or about the 9th day of February, 1952, defendants and each of them entered, or caused to be entered, upon his land in his possession and without leave, and there caused to be cut down and carried off and converted, one hundred twenty-one evergreen trees of the value of $1200.00; that the land belonging to plaintiff was damaged and lessoned in value to the amount of $3500.00; that the acts of defendants were wrongful, malicious and wanton and by reason thereof, he demanded exemplary damages of defendants and each of them in the sum of $2500.00. Defendants answered, denying each and every allegation contained in the complaint. Upon trial to a jury on April 14 and 15, in the district court of Jefferson county, the court gave the following instruction:

"Instruction No. 4

"You are instructed as a matter of law to find the issues on plaintiffs' complaint in favor of the plaintiffs and against the Defendant Holtenbeck."

The jury returned a verdict of $300.00 exemplary damages against Holtenbeck; another verdict in favor of plaintiff against Yakes for exemplary damages of $300.00; and another verdict for exemplary damages of $300.00 against DiSalvo; and a general verdict for damages to the land of $750.00 and value of the trees removed $250.00. Appropriate judgments were duly entered. Motion for new trial was dispensed with and a writ of error was duly issued.

Plaintiffs in error for review, summarized their argument by contending that it was necessary for the Williams, defendants in error, to prove that the acts complained of occurred on their property, and that the trees cut belonged to them; that this proof should be by com-

petent evidence and not by hearsay; and that in the absence of anything except heresay testimony, the court should have given the jury the opportunity of rejecting them if incredible; that the giving of instruction No. 4, above set out, made this hearsay evidence conclusive not only against Holtenbeck, but against DiSalvo and Yakes as well; and further, that the court should have given tendered instructions and did give instructions over the objections of counsel; and particularly the instruction as to exemplary damages, because there was no justification in the evidence for such instruction.

The record does not contain the objections that were unquestionably made to the instructions, because we find under date of September 18, 1953, that counsel in the case appeared before the trial court with respect to settling certain objections to the reporter's transcript, at which time counsel stipulated that counsel for plaintiffs in error did object to the giving of instruction No. 4. Then counsel for plaintiffs in error moved the court for an order that the record be amended to show that counsel for defendant objected to the giving of instruction No. 7.

"The Court: The Court will deny this motion, but in so doing wishes to state that at the time of arguing the instructions at the trial of this case the regular reporter, who had reported the greater part of the trial, was called away on account of sickness and that a substitute reporter did not get down the objection or objections which were made to instructions at that time. The Court does recall that there was an argument with reference to certain instructions, but just which instructions we cannot recall at this time. So our ruling in denying the motion is based merely upon the fact that the defendants are in the position of not being able to show what objection or objections were in fact made, other than the one that has been stipulated to, and we call this a very unsatisfactory situation."

It thus is to be seen that we are not in a fair position

to discuss the claimed error in the giving of instructions. We cannot determine what was called to the trial court's attention by objections that it is made certain were made and were not in the record; however, we feel that it is necessary only to determine two controlling questions, namely: Did the Williams, defendants in error, by competent evidence, establish that the trees were removed from their ground; and further, was there any evidence to support judgments for exemplary damages based upon evidence that the acts of the plaintiffs in error were wrongful, malicious and wanton?

As to the first proposition, the burden was upon the Williams to definitely and positively identify the land described in their deed as being that land from which the trees involved in this action were removed. In an attempt to meet this burden, Lowell Williams testified on cross-examination, that he had no personal knowledge of the location of the boundaries, and that he saw Mr. Goodspeed, his grantor, put some pipes in the ground replacing some stakes that were already there, and he testified that he did not know who put in the wooden stakes. When asked how he knew that these pipes placed there by Goodspeed were on the property line, he said it was because they were placed where the wooden stakes had been, and that he was told that that was the property line, and that the source of his knowledge of the boundaries even at the time of the trial was somebody else's knowledge; and that he could not of his own knowledge state that the fence along the north line of the property was on the property line. He then made a blackboard drawing which was nothing else except a diagramatic presentation of his hearsay testimony, and not even contended by him to be accurate. In a further attempt to meet the burden, counsel for defendants in error Williams, called Lane, a registered engineer, as a witness. Lane testified that he was unable to locate on the ground by the customary land-surveying methods, the point of beginning of the description in Williams'

deed; however, he did not give any reason for his failure to make any such location, and stated that he accepted the iron pipes as markers because defendant in error Lowell Williams told him they were on the line of the property. Lane did not know who placed the pipes, and found no identifying marks on them. He then introduced a survey plat, which, in a general way, was more or less in line with the blackboard drawing that had been made by Williams. This survey was based upon hearsay handed down two or three times and Lane admitted that if the location of the point of beginning was incorrect, then the plat was incorrect; however, over objections of counsel, the court admitted the plat in evidence and permitted the jury to consider the blackboard drawing without instructions. The court stated that it was going to be admitted on Lane's assumption that he knew where the proper point of beginning was. The court also stated: "The witness is very indefinite about that. Whether that is modesty or lack of knowledge here, I cannot tell. A modest man would speak as he did and yet possibly he would know definitely or quite definitely where the point of beginning is. I take it that he would not certify and put this plat on there without a fairly firm conviction or knowledge on his part that he had a true point of beginning." The court then asked the witness the following question: "Is that your testimony that you do not know where the point of beginning is? A. May see the plat again, please, I do not know what has been brought out heretofore, but I think at this point this is pertinent and that is the statement that is found upon this certificate: 'The entire survey is based on information that the existing one-inch pipe marker shown below defines the northwesterly lines of lots 35 to 39, block 1, Brereton's Addition to Twin Spruce.' "

Pursuing this inquiry about the assumption in the surveyor's plat in evidence, the court further said: "Now I want to know from the witness [Lane] if the witness

has nothing more than just the assumption, something that he learned from somebody else?"

In response to a question by counsel as to how he arrived at such assumption, the witness Lane testified: "These one-inch pipe markers referred to on that certificate were shown to me by Mr. Williams at the time I made the survey and measured the distances between said markers, and angles between said markers, they coincide with the distances and angles shown in the description of the property." The witness on cross-examination also testified that his source of information about the pipe markers was a statement to him by Mr. Williams, and that there was not anything on the markers themselves that identified them. The description of the land involved as set out in the deed to the Williams, under which they claimed, starts with the following words: "Beginning at a point in the front (northwest) line * * *." It is abundantly clear from the record and the above references to the testimony that this point was never accurately or definitely established, and therefore such descriptions of Williams' property as was presented at the trial, left the area from which the trees were removed clouded with some doubt as to the exact ownership. The controlling element for the establishment of Williams' claim was to accurately identify the land described in his deed and to locate such description on the ground. For proof of this the burden was upon him, and it is established by the record that he failed to meet this burden.

The giving of instruction No. 4, hereinabove set out, in effect made conclusive, the testimony of Williams and the surveyor Lane, including the blackboard drawing and survey plat. As above noted their testimony and the exhibits were based entirely upon hearsay and the court gave full consideration thereto by this instruction, and it established to the jury that a trespass and conversion had been committed by Holtenbeck, and that he was guilty of malicious and wanton conduct, and it then left

DiSalvo and Yakes in the position of having to assume the liability of the wrongful acts of Holtenbeck.

Instruction No. 5 was as follows:

"You are instructed that all persons who instigate, encourage, advise, co-operate in, aid, or abet the commission of a trespass, or who approve of it after it is done, if done for their benefit, are cotrespassors with a person committing the trespass and are liable as principals to the same extent and in the same manner as if they had performed the wrongful act themselves. Therefore, if you find from the evidence that the Defendant Frank Yakes, or the Defendant Domenio DiSalvo, did so act, then you will find in favor of the Plaintiffs against such of the Defendants so acting."

This instruction permitted the jury to find DiSalvo and Yakes responsible for the acts of Holtenbeck without finding that Holtenbeck acted for them, and there is no evidence that either of the two encouraged or advised Holtenbeck to commit a trespass or that they cooperated therein, or approved of it afterwards. The most logical view of all the testimony is that Holtenbeck was an independent contractor; and further, the record discloses that Yakes was no more than a gratuitous intermediary in the sale of the timber by Mrs. Brereton to DiSalvo.

The giving of instruction No. 4 virtually required the award of exemplary damages against Holtenbeck as a matter of law. This in face of the testimony that Holtenbeck apparently honestly believed he was on Mrs. Brereton's land, and there is absolutely no evidence whatsoever against Yakes or DiSalvo which would justify an instruction upon exemplary damages. If defendants believed that they were on the land of another beside that of Williams, it tended to show good and not bad, intention. *Rosenbaum v. Mathews*, 113 Colo. 307, 156 P. (2d) 843. But when it appears that at a trial where there was a strenuous effort made to determine just what were the lines of Williams' property, and this

could not be done, then it is too much to expect that strangers could walk into the area and immediately know that they were on his property. It requires more substantial evidence than was here produced to fix liability for trespass, and particularly exemplary damages. If, by any stretch or color of the testimony here it could be said that defendants were trespassers, it would necessarily have to flow from their operations in the accomplishment of a lawful undertaking, and, to say the least, DiSalvo and Yakes, who neither directed nor countenanced any act of trespass on the part of Holtenbeck, are not liable. 52 American Jurisprudence, p. 861, §31.

The judgment is reversed and the cause remanded with directions to set aside the verdict and dismiss the complaint.