No. 20,144.

LALAH M. ASHLEY *v.* GEORGE W. HILL, ET AL.

(375 P. [2d] 337)

Decided October 1, 1962.   Rehearing denied November 5, 1962.

Mr. BEN L. WRIGHT, JR., for plaintiff in error.

Messrs. HASKELL, CRANDELL, FLYNN and COCHRAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to the parties by name or as they appeared in the trial court where plaintiff in error was plaintiff and defendants in error were defendants.

The controversy has to do with the ownership as between plaintiff and defendants Hankins of the following property: The Qualla Millsite, U. S. Mineral Survey 56B, as distinguished from the Qualla Lode, Survey 56A (not in contention here) in the Deer Creek Mining District in Jefferson County. The only other party who has appeared here, or in the trial court, is the defendant Marjorie L. Woodworth, who is a vendee under a contract of sale and purchase with the defendants Hankins relating to a portion of the millsite.

The question for determination is whether a land resurvey which established that an error was made in the legal description of the millsite in a United States patent which was issued under an earlier survey, worked an ouster of a subsequent patentee and his successors in interest of that portion of real property conveyed by a later patent which is embraced within the corrected description of the millsite. For a proper understanding of the case a consideration of undisputed facts is essential.

The original government survey field notes and land plat made in 1883 showed the millsite (except a small portion) as being in the NW ¼ of Section 24, Township 6 South, Range 70 West of the 6th Principal Meridian. A patent based upon that survey was issued by the United States in September 1887 to the locator, George W. Hill, a non-appearing defendant herein, which was properly recorded in 1901.

Plaintiff's title to the millsite is deraigned through the Hill patent, a treasurer's deed covering a fractional interest issued in 1922, and a quit-claim deed from her immediate grantor, one Helen V. Hurliman, dated July 28, 1934. Plaintiff's deed described the property in conformity with the original survey of the millsite and was placed of record in Jefferson county in August 1934.

The defendants John and Ella Hankins claim to be the owners of the NE ¼ SE ¼ (Lots 6 and 9) of Section

23, and the NW ¼ SW ¼ of Section 24, township and range aforesaid, except certain parcels not involved in this litigation. Their title originates in two United States patents issued to others in December 1904 and April 1931, respectively, both of record. The land described in the 1931 patent is not directly involved here, except in so far as it is a part of the whole tract of the defendants. The immediate grantor of said defendants was Jeanette Weakly, as administratrix of the estate of Per J. Sea, deceased. Sea was one of the patentees and also was the grantee of the other patentee. The deed to the Hankinses was dated and acknowledged July 13 and was recorded July 16, 1956. The two patents for these lands were not limited by any exception or exclusion of the Qualla Millsite. They and each of them were outright grants by the United States to the defendants' predecessors in title, subject to the usual exceptions and reservations.

Each of the three government patents under consideration describes different real property and none in and of itself unassisted by land survey field notes or plats conflicts with any other; hence, the record title of the parties as shown by the United States patents, alone, is not in contention. The locus by re-survey of the Qualla Millsite in the lands of the Hankinses created the controversy.

The cause of the dispute relates back to a dependent re-survey by the United States Supervisor of Surveys and the preparation in accordance therewith and the acceptance in 1927 of supplemental plats of the aforesaid two sections of land (and Section 26, not directly involved here) by the Land Department. They show the Qualla Millsite as being approximately one-half mile south from its situs established by original survey. In November 1956 (and July 1958) copies of the supplemental plat of said Section 23, and in July 1958, a copy covering Section 24, were filed in the office of the Clerk and Recorder of Jefferson county.

Plaintiff's action in the trial court was commenced under Rule 105, R.C.P. Colo., for an adjudication of rights of the parties in the Qualla Millsite and for other relief. The complaint did not describe the property according to original survey as it was described in the Hill patent and in plaintiff's deed, but described it conformably with the re-survey. The description by re-survey is almost entirely in conflict with the patented lands described herein as belonging to the defendants Hankins.

A cross-complaint (counterclaim) was filed by the defendants Hankins which alleged their ownership of the lands claimed by them, subject to the Woodworth contract, and also alleged sufficient ultimate facts and conclusions of law in the nature of a quiet title action, which, if true, would entitle them to relief under Rule 105.

By stipulation of counsel, the trial court made its findings and judgment upon a transcript and exhibits of a former trial of the case before another judge who was not a member of the judiciary at the time judgment was entered.

Findings and decree were entered in favor of the defendants Hankins and plaintiff is here by writ of error asserting that prejudicial error committed by the trial court requires reversal of the judgment.

The record as well as the briefs filed by counsel are devoid of anything which would tend to show that any direct court proceeding has ever been instituted by the United States to annul or reform any of the patents to the land involved, particularly that for the Qualla Millsite and we must assume that there has been no such action on behalf of the government. The parties to this dispute themselves submitted the controversy to the district court which had jurisdiction of the parties and of the subject matter.

The record upon which the trial court arrived

at its decision contains substantial conflicting evidence relating to the true situs of the millsite. The court found that the millsite, or the major portion thereof, as revealed by the re-survey, is situate in the lands claimed by the defendants Hankins, and concluded that the re-survey did not affect the title to their lands. We agree with the conclusion of the trial court.

██ ██ Undoubtedly the government is empowered to re-survey lands in public ownership as often as it deems necessary and to make, adopt and file plats of such land in connection therewith. When, however, the United States issues a patent for land, the rights of the patentee become fixed and the government, having parted with title to such land, becomes divested of all authority or control over the land and the title thereto. 73 C.J.S., Sec. 201, p. 856. It follows, and indeed it has been held by many federal and state courts, that after the issuance of a land patent the United States has no more authority than an individual grantor of real property to limit or diminish the rights of the grantee, except by a direct proceeding in a court of competent jurisdiction in which the patentee has been made a party and has been afforded due process of law. 42 Am. Jur., Sec. 41, p. 820, and cases cited. Under the rule of these decisions which we believe is based upon reason and justice, rights which have been acquired under a government survey cannot become impaired or interfered with by a later survey or by the subsequent correction of a plat of the land. *Everett v. Lantz,* 126 Colo. 504, 252 P. (2d) 103; *United States v. State Investment Co.,* 44 S. Ct. 289, 264 U. S. 206, 68 L. Ed. 639; *Kean v. Canal Co.,* 23 S. Ct. 651, 190 U. S. 452, 67 L. Ed. 1134; *People v. Covell,* 17 Cal. App. (2d) 627, 62 P. (2d) 602; *Lakelands Inc. v. Chippewa & Flambeau Improvement Co.,* 237 Wisc. 326, 295 N.W. 919; *Lawrence v. Byrnes,* 188 Miss. 127, 193 So. 622, and numerous other cases. The case before us is within the rule thus announced and we perceive no

reason for a reversal, consequently the judgment is affirmed.

MR. CHIEF JUSTICE DAY and MR. JUSTICE PRINGLE concur.