UNITED STATES of America,
Plaintiff-Appellee,

v.

James P. DOYLE and Florence A. Doyle,
Defendants-Appellants.

No. 710-70.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1972.

**634**

Harold L. Neufeld, Denver, Colo., for defendants-appellants.

Peter R. Steenland, Atty., Dept. of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., James L. Treece, U. S. Atty., Leonard Campbell, Asst. U. S. Atty., Denver, Colo., and Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

Before MURRAH, BREITENSTEIN and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an action brought by the Government alleging occupancy trespass by defendants of a portion of the Pike National Forest and seeking injunctive relief against trespass and for removal of improvements from the property in dispute. The case was tried to the court. The trial court determined the boundary dispute in the Government's favor on the basis of a dependent resurvey. Injunctive relief was granted and this appeal followed.

The Government owns land in the Pike National Forest including the SW¼ SE¼, Section 1, Township 8 South, Range 71 West of the 6th Principal Meridian in Jefferson County, Colorado. The defendants are the owners of the north 250 feet of the east 700 feet of the NW¼ NE¼, Section 12, adjoining to the south. The dispute here concerns the north boundary line of the defendants' property which is formed by the section line between the described portions of Sections 1 and 12 as it runs along the north of their property. According to the Government the correct section line lies south of the property line claimed by the defendants. The defendants say that that the true line is about 124 feet north on one end and 147 feet north on the other end of the section line that the Government claims to be correct.

The Government's position is that the correct section line and therefore the north property line of the defendants' property should follow a resurvey by the single proportionate measurement method made by a Government surveyor, Mr. Brinker, in 1965.

It says that a stone marker which was described in the original 1872 survey performed by a Mr. Oakes is lost and that the loss of this marker makes the quarter corner at the northwest corner of the NE ¼ of Section 12 a lost corner. Therefore the Government maintains that the resurvey made between the northeast and northwest corners of Section 12, and establishing a straight line between them, was the proper basis for locating the true section line and the quarter corner which was located at the midpoint of that line. The defendants, on the other hand, essentially argue that collateral evidence consisting of Forest

Service signs, tree blazes and testimony sufficiently established as correct the boundary relied on by them. They say that a determination that a corner is lost is disfavored and that the trial court applied the incorrect criteria and burden of proof in making its determination that the corner was lost and erred in accepting the boundary established by the 1965 resurvey.

The trial court found that a stone relied on by the defendants was not the actual quarter section marker, and that this corner was lost; that the tree blazes were too recent to be relied on; that the dependent resurvey was a proper basis for determining the boundary; and that, therefore, defendants were in trespass on the disputed strip of land.[1] We are satisfied that the record supports findings by the trial court that the original quarter corner monument was lost and that a stone claimed by defendants to be the marker was not the original monument.[2]

On appeal the defendants argue two propositions. First, they say that the trial court erred in failing to sustain their motion to dismiss under Rule 41 Fed.R.Civ.P. at the close of the Government's case. Secondly, they argue that the trial court used the wrong criteria in determining the facts and that it erred and imposed a burden on the defendants to establish conclusively the original boundary line. We will discuss the facts in more detail in treating these issues.

The first proposition of the defendants is without merit. As it was entitled to do under Rule 41 Fed.R.Civ. P., the trial court declined to rule on the motion to dismiss when the Government rested or to render any judgment until the close of all the evidence. The defendants chose not to stand on their motion but offered their proof. In these circumstances the defendants may not claim error by the refusal of the trial court to grant the motion made when the Government rested. A. & N. Club v. Great American Insurance Co., 404 F.2d 100 (6th Cir.). The defendants argue that the Government failed to prove its case or establish the property line, which the plaintiff must do in a trespass

---

1. The pertinent portions of the trial court's findings are as follows:

 "The original monument (placed at the quarter corner in the 1872 survey) was not found, after a thorough search of the area by this surveyor and his crew. No accessories to the monument were found, and no record of other surveys pertinent to the involved sections was found in the County records.

 \* \* \* \* \*

 "We find, from all of the evidence, that the stone claimed by defendants to be the quarter corner marker is not the original monument for the quarter corner. There was no testimony from any witness claiming to have knowledge of the original location. The tree blazes relied on by defendants were of too recent origin to be of significant evidentiary value; the blazed line nearest the claimed monument is some 80 to 90 feet south of the stone. The markings on the stone are not discernible. The claimed location of the monument cannot be confirmed by the field notes of the original survey.

 "We therefore conclude that the original quarter corner is lost and its original location cannot be identified. In such circumstances, the accepted method of establishing the lost quarter corner is to locate a straight line between the section corners and find a point equidistant therefrom; such point then is the relocated quarter corner. Vaught v. McClymond, 116 Mont. 542, 155 P.2d 612 (1945); Littlejohn v. Fink, 109 Neb. 282, 190 N.W. 1020 (1922); Sec. 376, Manual of Surveying Instructions, *supra*. This method was followed by plaintiff in the 1965 dependent resurvey. The quarter corner so relocated and fixed by the brass-capped rod set in the ground is found to be the correct quarter corner."

2. We feel that these findings do not necessarily lead to the finding that the *corner* was "lost," rather than merely "obliterated" and capable of being re-established by other sources of information. See Gaines v. City of Sterling, 140 Colo. 63, 342 P.2d 651; Mason v. Braught, 33 S.D. 559, 146 N.W. 687, 689, 690. We consider this question later in this opinion.

case. The merits of this point are considered below in judging the sufficiency of the record as a whole to support the judgment. See Bogk v. Gassert, 149 U. S. 17, 23, 13 S.Ct. 738, 37 L.Ed. 631; Dindo v. Grand Union Co., 331 F.2d 138 (2d Cir.). However, no error is shown by the trial court's action in refusing to sustain the motion to dismiss.

The second issue concerns whether the trial court erred in finding that the quarter corner was lost and in accepting the location of it and the boundary line established by the 1965 resurvey. And this issue involves also consideration of defendants' contentions that the incorrect criteria and burden of proof were used by the trial court in determining the facts. If the court properly found that the corner was lost and that the resurvey boundary should be accepted, there is no question as to the accuracy of the new line or the location of the quarter corner at its midpoint.

■ The guiding legal principles are not in dispute. Where there is no controlling federal legislation or rule of law, questions involving ownership of land are determined under state law, even where the Government is a party. Mason v. United States, 260 U.S. 545, 558, 43 S.Ct. 200, 67 L.Ed. 396; United States v. Williams, 441 F.2d 637, 643 (5th Cir.); Standard Oil Co. of California v. United States, 107 F.2d 402, 415 (9th Cir.). The rule is recognized implicitly by the federal statute permitting resurveys. See 43 U.S.C.A. § 772.[3]

■ The original survey as it was actually run on the ground controls. United States v. State Investment Co., 264 U.S. 206, 212, 44 S.Ct. 289, 68 L.Ed.

639; Ashley v. Hill, 150 Colo. 563, 375 P.2d 337, 339. It does not matter that the boundary was incorrect as originally established. A precisely accurate resurvey cannot defeat ownership rights flowing from the original grant and the boundaries originally marked off. United States v. Lane, 260 U.S. 662, 665, 666, 43 S.Ct. 236, 67 L.Ed. 448; Everett v. Lantz, 126 Colo. 504, 252 P.2d 103, 108. The conclusiveness of an inaccurate original survey is not affected by the fact that it will set awry the shapes of sections and subdivisions. See Vaught v. McClymond, 116 Mont. 542, 155 P.2d 612, 620; Mason v. Braught, 33 S.D. 559, 146 N.W. 687.

■■ The actual location of a disputed boundary line is usually a question of fact. Gaines v. City of Sterling, 140 Colo. 63, 342 P.2d 651. " . . . [T]he generally accepted rule is that a subsequent resurvey is evidence, although not conclusive evidence, of the location of the original line." United States v. Hudspeth, 384 F.2d 683, 688 n. 7 (9th Cir.); accord, see Ben Realty Co. v. Gothberg, 56 Wyo. 294, 109 P.2d 455, 458, 459. And in its trespass action the burden of proving good title to the land rests on the Government. Yakes v. Williams, 129 Colo. 427, 270 P.2d 765; see also Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849.

■ The procedures for restoration of lost or obliterated corners are well established. They are stated by the cases cited below and by the supplemental manual on Restoration of Lost or Obliterated Corners and Subdivisions of Sections of the Bureau of Land Management (1963 ed.).[4] The supplemental

---

3. 43 U.S.C.A. § 772 provides in pertinent part:

"The Secretary of the Interior may, as of March 3, 1909, in his discretion cause to be made, as he may deem wise under the rectangular system on that date provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark

the boundaries of the public lands remaining undisposed of: *Provided, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement . . ."* (Emphasis added.)

4. This manual is a supplement to the Manual of Survey Instructions (1947) of

manual sets forth practices and contains explanatory and advisory comments.

Practice 1 of the supplemental manual recognizes that an existent corner is one whose position can be identified by verifying evidence of the monument, the accessories, by reference to the field notes, or "where the point can be located by an acceptable supplemental survey record, some physical evidence, or testimony." Practice 2 recognizes that an obliterated corner is one at whose point there are no remaining traces of the monument, or its accessories, but whose location has been perpetuated, or the point for which may be recovered beyond a reasonable doubt, by the acts and testimony of the interested land owners, competent surveyors, or other qualified local authorities, or witnesses, or by some acceptable record evidence. Practice 3 states that a lost corner is one whose position cannot be determined, beyond reasonable doubt, either from traces of the original marks or from acceptable evidence or testimony bearing on the original position, and whose location can be restored only by reference to one or more interdependent corners.

 The authorities recognize that for corners to be lost "[t]hey must be so completely lost that they cannot be replaced by reference to any existing data or other sources of information." Mason v. Braught, supra, 146 N.W. at 689, 690. Before courses and distances can determine the boundary, all means for ascertaining the location of the lost monuments must first be exhausted. Buckley v. Laird. 493 P.2d 1070, 1075 (Mont.); Clark, Surveying and Bounda-

ries § 335, at 365 (Grimes ed. 1959); see advisory comments of the supplemental manual, supra at 10.

 The means to be used include collateral evidence such as boundary fences that have been maintained, and they should not be disregarded by the surveyor. Wilson v. Stork, 171 Wis. 561, 177 N.W. 878, 880. Artificial monuments such as roads, poles, fences and improvements may not be ignored. Buckley v. Laird, supra, 493 P.2d at 1073; Dittrich v. Ubl, 216 Minn. 396, 13 N.W.2d 384, 390. And the surveyor should consider information from owners and former residents of property in the area. See Buckley v. Laird, supra, 493 P.2d at 1073–1076. "It is so much more satisfactory to so locate the corner than regard it as 'lost' and locate by 'proportionate' measurement." Clark, supra § 335 at 365.

 Measured against these standards we believe the trial court's acceptance of the resurvey is supported by sufficient evidence of substantial compliance with proper procedures. The sufficiency of the resurvey investigation is not free from doubt since the record shows little contact with owners, who are one proper source of relevant collateral evidence.[5] However, the record shows that the surveyors searched the records of the Bureau of Land Management before the Brinker survey. The Government surveyor approving the resurvey, Mr. Teller,[6] said that prior surveys were also sought, but none were located, by requests to the county clerk, recorder and surveyor for plats filed as surveys of record. The special instruc-

---

the Bureau. The courts have recognized the manual as a proper statement of surveying principles. See Reel v. Walter, 131 Mont. 382, 309 P.2d 1027.

5. A Government surveyor testified that they were aware that the defendants, "among other people," had a deed originating from the sixteenth corner of the line between Sections 1 and 12. While the surveyors should investigate and consider collateral evidence *during* the resurvey, we note that here information from the Doyles' surveyor was received

later, shortly before trial, in a conference in the field and considered by the Government surveyor, including the stone that he submitted for the quarter corner monument.

6. When the resurvey was commenced Mr. Teller was Chief of Cadastral Surveys at the Colorado office of the Bureau of Land Management. On July 1, 1965, he was promoted to the position of Chief of the Bureau of Land Management, Denver Service Center, Cadastral Surveying Branch.

tions for this resurvey recite that inquiry was made of incumbent and past surveyors and Rangers and that no factual data was discovered that would assist in recovery of the missing quarter section corner. And the original quarter corner marker placed during the 1872 survey was not located. The trial court found that this monument was not located, after a thorough search of the area by the surveyor and his crew, and the record supports this finding.

We are satisfied that the record supports the trial court's finding that the corner was lost. On the entire evidence we are not left with a definite and firm conviction that a mistake was committed. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S. Ct. 1562, 23 L.Ed.2d 129. We likewise are persuaded that the record sustains acceptance of the validity of the resurvey, and the accuracy of the location of the lost quarter by the resurvey. We cannot agree that the trial court erred in the criteria used in determining that the corner was lost. Nor do we feel that the court erred and placed the burden of proof on the defendants to establish the boundary conclusively themselves. The record does not show that this was done and such error is not presumed. Smith v. Crouse, 413 F.2d 979, 980 (10th Cir.).

The defendants argue that the court erred in concluding that the corner was lost, disregarding acceptable collateral evidence. They say the over-all line of the original survey was about 192 feet longer than the straight line established by the proportionate measurement method; that the blazed tree line and Forest Service signs showed a boundary relied on since at least 1942; and that a former owner of property along the line, including the Doyle property, testified about markers and monuments which had previously existed along the blazed tree line. This proof was all weighed by the trial court. It was found that the irregular line of blazed trees was of too recent origin to be of significant evidentiary value and that it was some 80 to 90 feet south of the stone relied on by the defendants as the lost quarter corner monument. And on conflicting testimony by the surveyors the court found that this stone was not the lost marker. Applying the criteria from the authorities we have discussed, we are satisfied the findings and conclusions of the trial court are sustained.

Affirmed.